CHICAGO & EASTERN ILLINOIS RAILROAD COMPANY

v.

MARY E. HINES, ADMINISTRATRIX.

*Master and Servant—Railroad Watchman—Personal Injuries—Practice —Evidence—Instructions—Arrest of Judgment.*

1. The refusal of an instruction can not be complained of where a special finding of the jury specifically denies the hypothesis thereof.

2. A willful neglect of means to save the lives and limbs of servants performing dangerous service, from needless peril, constitutes gross negligence.

3. In an action for the recovery of damages for the death of a railroad employe through the alleged negligence of the company, this court holds, upon the allegation that the declaration is insufficient in not alleging knowledge by the defendant, and want of knowledge by the deceased, of the defects named, as to the first objection, that the faults, if any, touching the language of the declaration, were faults in construction, and that no such averment was necessary; and as to the second objection, that the want of an averment of such lack of knowledge can not be complained of.

4. In the case presented, this court declines to interfere with a verdict for $5,000, in behalf of the plaintiff.

[Opinion filed June 14, 1889.]

APPEAL from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding.

Mr. W. H. LYFORD, for appellant.

Mr. WILLIAM H. BARNUM, for appellee.

GARY, J. This is an action under the statute by the appellee, for the death of her husband, John Hines, by the alleged negligence of the appellants. He was a night switchman employed by them, and was killed about ten o'clock on the night of May 6, 1887. There was a demurrer to the declaration, which the records show was overruled on motion of the appellee. They afterward moved in arrest of judgment, and

now allege as error that the declaration is insufficient in not alleging knowledge by the appellants, and want of knowledge by the deceased, of the defects which are alleged to have been the cause of the accident resulting in his death.

It is held in this State, contrary to the rule laid down in Tidd's Pr., 740, 918, that if a declaration is so totally defective as not to support the judgment, that it may be availed of by a motion in arrest, even after a demurrer thereto has been overruled, and the defendant has pleaded over. Stearns v. Cope, 109 Ill. 340. This case overrules, without alluding to, the prior cases of DeWolf v. McGinnis, 106 Ill. 553; Quincy Coal Co. v. Hood, 77 Ill. 68, and Am. Ex. Co. v. Pinckney, 29 Ill. 392.

But the rule of practice based upon the stickling of the court for its own dignity (see Tidd as cited) never applied to an appellate court, which, on a writ of error, would always examine as to the sufficiency of the declaration, as an original question. 2 Tidd's Pr., 1169; Kipp v. Lichtenstein, 79 Ill. 358, and cases there cited; Chicago v. Turner, 80 Ill. 419, where there had been in fact a demurrer to the declaration overruled, though the report does not show it.

If, therefore, the declaration was fatally defective, and not aided by the verdict, the judgment would have to be reversed. Now, as to a lack of an averment of knowledge by the appellants, although the language of the declaration is that they "permitted the ties of its said railroad track to be and remain above the surface of the ground and the space between the said ties were not filled in," in the first count, and "permitted a wide space to exist between the ties of said track and the switch bar" in the second, it is apparent that if these were faults, they were faults in construction, and the case of C. & N. W. R. R. Co. v. Sweet, 45 Ill. 197, is in point that no such averment in such case is necessary.

As to the lack of averment of want of knowledge by the deceased, though some American cases can be found that support the objection, the course of pleading as shown by the English cases, is against it.

In the English cases the question has been elaborately discussed and considered, while the American cases show but

C. & E. I. R. R. Co. v. Hines.

little attention to it.   Brizzell v. Laconia Mfg. Co., 48 Maine, 113; M. R. & L. E. R. R. Co. v. Barber, 5 Ohio St. 541; Watling v. Oastler, 23 L. T. R. 815; Mellors v. Shaw, 1 B. & S. 101 E. C. L. 437, and cases there cited.    2 Thomp. Neg., 1050 *et seq.*

The question is analogous to the one frequently made upon the averment of due care by the plaintiff, in an action for negligence by the defendant.    While, as a general rule, the proof must show such care, the declaration need not aver it. W., St. L. & P. Ry. Co. v. Shacklet, 105 Ill. 364; C. & N. E. Ry. Co. v. Cass, 73 Ill. 394.   In Bass v. C. B. & Q. R. R. Co., 28 Ill. 9, where a demurrer had been sustained below to a declaration that did not contain such averment, and its absence was urged as a ground for the judgment, the same judge who had said in Hazzard v. C. B. & Q. R. R. Co., 26 Ill. 373, that the declaration there, was bad for such a lack, reversed the judgment without alluding to what he had said before, or even to the point at all.    It is true that the case of Bass did not call for any decision on that question as to instructions.

Plaintiff's instructions given:

1.    The court instructs the jury as a matter of law that the defendant company was bound to use all reasonable care and diligence to furnish the servants engaged in switching its cars with safe road-bed and machinery at its switches, and it is for the jury to determine from the evidence whether said duty was performed by said company, or whether it was negligent, and if so, how negligent it was in the performance of that duty.    (*Given,*)

2.    Even if the jury believe from the evidence that the deceased, John Hines, was guilty of some negligence at the time he was killed, still if the jury further believe from the evidence that he was using ordinary care under the circumstances, and that defendant company was guilty of negligence as charged in the declaration, and that the negligence of said Hines was slight in comparison with such negligence of the defendant, and that the defendant's negligence was gross in

comparison, and that John Hines was killed through and by reason of such gross negligence on the part of the defendant (if the jury find that it was guilty of gross negligence), then the plaintiff is entitled to your verdict. (*Given.*)

Defendant's instructions given:

1. The only ground on which the plaintiff bases her claim for recovery in this case is, the defendant's failure to fill in the space between the ties *and under* the switch-bars, was negligence. If she has failed to prove this, and if, on the contrary, the evidence shows that it would have been impracticable to fill in those spaces, that it would have seriously interfered with the operation of the track in question, and that *in the management and operation of railroads it is reasonably proper or* necessary to leave spaces between the ties at such places, substantially the same as in the defendant's track in question, then your verdict must be for the defendant. (*Given.*)

2. Even if the defendant permitted its track to be in defective condition, as alleged in the declaration, if these defects were known to the deceased, and he still continued to work there without objection, and without any promise that the track would be made safer, the plaintiff can not recover in this case. It is the privilege of an employe, when he knows that his work is dangerous, either to quit or require that the work be made safe. If he does not quit and does not object to the danger he assumes the risk of injury from the dangerous work, and he must bear the consequences. His representatives can not complain against the employer in such a case. (*Given.*)

3. The jury are instructed that the defendant was not bound to furnish an absolutely safe track for its employes to work on. If the track in question was reasonably safe and in as good condition as ordinarily prudent railroad companies kept their switch-yard tracks at such places, then the plaintiff can not recover and your verdict must be for the defendant. (*Given.*)

4. If you find from the evidence that the track in question was in the same condition in which it had been during all the

C. & E. I. R. R. Co. v. Hines.

time that the plaintiff's husband had been working there, that he knew the condition of the track in question all the time, and made no objection to working on it, but voluntarily continued to work for several weeks and up to the time he was killed, without any promise from the defendant that the track would be changed, then the law presumes that the plaintiff's husband assumed the risk of injury by reason of the condition of the track, and the plaintiff can not recover for such injury.  (*Given.*)

Defendant's instruction refused:

5. If the plaintiff's husband knew the condition of the track where the accident occurred, or by the exercise of ordinary care could have known its condition, then the plaintiff can not recover in this action.  (*Refused.*)

The appellants object to the first of the foregoing instructions, that it does not confine the jury to the consideration of the special defects which are alleged in the declaration. It is to be observed that this instruction does not profess to tell the jury upon what grounds the appellee might recover. The evidence of any other defects than such as were alleged in the declaration was very slight, and seem to have attracted no attention from anybody during the trial, and the first instruction for the appellants definitely stated the grounds of the action and confined the attention of the jury to them. To the second it is objected that there was no evidence of gross negligence by the appellants. The consideration of this objection requires some review of the evidence, but before proceeding to that it is convenient to say that the appellants' refused instruction is wrong, by using the word "could" instead of "would," and besides, in answer to a special question, the jury have specifically denied the hypothesis of that instruction, so that the refusal of it could have done no harm.

The deceased worked for the appellants as a night switchman; in so doing he carried a lantern; while his hours of labor included some daylight, which was becoming longer as the spring advanced, yet it did not appear that he had ever seen the place of the accident by daylight; he had been in that employment about six weeks, and the evidence tended

to show that he was a careful man; and that his death came by stumbling upon the track while about to couple a moving car to a still one, so that he fell and the car ran over him. He had been in similar employment upon other roads for nine years, and one of the complaints of the appellants, but which the record does not quite sustain, is, that they were not permitted to show how, in general, other roads construct their tracks at switches. In fact, the witness whom they were not permitted to examine on that subject, on cross-examination was recalled by them and fully examined upon it. The other instance cited by them would require considerable space to make clear, as could easily be done. The whole case comes to this: Is the evidence of such a character that the court should not permit the verdict of the jury to stand?

Where this switch was the space between the ties of the track was not filled up with ballast. The rails of the switch were held at the right distance from each other by iron rods clamped to the rails, and space must be left for those rods to move in, without rubbing the surface below them. The rods and the ties are substantially on the same level. At some switches the space between the ties is filled as much as may be without obstructing the movement of the rods. At this there might have been three or four inches more filling without that effect. With such filling it is and was well known to be safer to work upon, especially in the night. The business is one of danger at the best.

It is not denied that the first instruction on the part of the appellee states the law as to the duty of the appellants. The switch was intentionally constructed as it was. It is not an abuse of language to call a wilful neglect of means to save the limbs and lives of the men who perform this dangerous service from needless peril, gross negligence. Observation and experience teach that legal coercion is necessary to induce large employers of labor to do what is really practicable, to lessen the dangers which attend the services.

The legislation in England and America as to mines and machinery, municipal ordinances as to elevators, fire escapes, stairways and much else that might be referred to, all spring

out of the necessity of compelling precautions for the safety of persons in subordinate positions, that would not otherwise be adopted. And the verdicts of juries, often going too far, are in line with such municipal and State legislation. If this view is correct there was no error in submitting to the jury the question of gross negligence by the appellant. Whether the deceased had any previous knowledge of the manner in which the switch was constructed, whether his death was occasioned by it, whether he was exercising due care for his own safety, were all questions of fact. The jury is the tribunal intrusted by the law with the determination of them; and even under a system which still leaves upon the court the duty, and therefore the responsibility, of aiding the jury in reaching a right conclusion upon the facts in a case like this, that determination would be final. Mellors v. Shaw, *supra*.

There is no error in the record and the judgment is affirmed.

*Judgment affirmed.*