CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY

v.

ALFRED M. HOYT ET AL.

*Contracts—Covenant—Breach—Common Carriers.*

1. Contracts, sealed or unsealed, are to be construed, and performance pleaded, according to the intent of the parties.

2. In an action upon a covenant in a contract, while it is proper to set out the same in its own words, the breach assigned should be in accordance with the meaning thereof.

3. An averment that the plaintiff was willing to furnish storage for a given amount of grain, is not equivalent to one setting forth that he was at all times willing and ready to furnish the storage that might be necessary for a business of an amount named per year.

4. Carriers must have places of their own, or access to those of others, at which to discharge freight and take care of it a reasonable time for the consignees.

5. In an action of covenant upon an indenture of lease and agreement between a railroad company and elevator owners, touching the storage of grain, this court holds that the trial court erred in overruling the demurrer of defendants to the declaration, and that the judgment for the plaintiff can not stand.

[Opinion filed June 30, 1890.]

APPEAL from the Superior Court of Cook County; the Hon. JOHN P. ALTGELD, Judge, presiding.

Messrs. JOHN T. FISH and EDWIN WALKER, for appellant.

Messrs. JOHN N. JEWETT & JEWETT BROS., for appellees.

GARY, P. J.    This is an action of covenant by the appellees upon an indenture of lease and agreement made on the 18th day of February, 1880, between the company of the first part, and the appellees (with others since dead) of the second part.

The agreement implies that the parties of the second part had then a grain elevator standing upon lots described as one and two, and that lots three, four and five were owned by the company. By the indenture the company demised the three lots last named to the parties of the second part, and they covenanted to erect thereon a grain elevator. The company covenanted to deliver thereat all the grain brought by its railway consigned to Chicago, so far as the company could legally control, and the parties of the second part covenanted to receive (from the company, is implied) grain to the capacity of that elevator, and use the other elevator for the same purpose, as far as other engagements would allow, and that the company should always have storage for at least a million bushels. There are many other provisions not necessary to state for the purpose now. The covenant and the breach assigned, now in question, are as follows:

" 8.    In consideration of the agreements aforesaid, the said party of the first part agrees that the total amount of grain received at said elevators shall be at least five million bushels.

on an average, for each year during the term of this lease, and in case it shall fall short of that amount, the said party of the first part agrees to pay to the said parties of the second part one cent per bushel on the amount of such deficiency, settlement to be made at the close of each year; and whenever it shall appear at the close of any year that the total grain received during so much of the term of this lease as shall then have elapsed, does not amount to an average of five million bushels for each year, the party of the first part shall pay to the parties of the second part one cent per bushel for the amount of such deficiency; but in case it shall afterward appear that the total amount received up to that time equals or exceeds the average amounts of five million bushels per annum, the amount so paid to the parties of the second part shall be refunded, or so much thereof as the receipts of the year shall have exceeded five million bushels, so that the whole amount paid on account of deficiency shall be refunded, should the total receipts for the entire term equal or exceed fifty million bushels in all, on an average of five million bushels for each year.

Breach: "But the said plaintiffs aver that notwithstanding the said defendants in said indenture of lease and agreement, covenanted that the total amount of grain received at said elevators should be at least five million bushels on an average for each year during the term of said lease, yet the amount of grain received in said elevators during the year 1888, during which year there was kept for the defendant the full storage capacity in said elevators of one million bushels, agreed upon in said indenture, was less than five million bushels covenanted by the defendant to be received therein during said year, by three million, one hundred and sixteen thousand, five hundred and twenty-one (3,116,521) bushels, by reason of which the defendant, according to the terms of the indenture, aforesaid, became and was bound, at the close of said year 1888, to pay to the plaintiffs for said deficiency for the year 1888, the sum of thirty-one thousand, one hundred and sixty-five dollars and twenty-one cents ($31,165.21)."

The declaration contains averments that the appellees have

kept and performed all the covenants on their part, and at all times were willing and ready to furnish storage for the company to the amount of one million bushels; but there is no special averment that they were ready and willing to do what the covenant on which the breach is assigned implies that they were to do, to make performance of that covenant by the company possible. Contracts, sealed or not sealed, are to be construed, and performance pleaded, according to the intent of the parties. 1 Chit. on Con. 105; 1 Chit. on Pl. 334.

Without averments of extrinsic facts as to the course and nature of the grain transportation and storage business, it is probably not possible for a court to declare what the intent of the parties was, as to the manner in which performance of that covenant was practicable. It seems clearly implied that the capacity of the two elevators was much less than five million bushels, and therefore, in covenanting as to that amount the parties contemplated a course of business by which grain put into an elevator, would, after no great lapse of time, be taken out again. Now it is quite clear that the covenant of the company " that the total amount of grain received at said elevator shall be at least five million bushels " means, and is to be read as if it were written with the words " brought to, in readiness to be," or equivalents, inserted before the word "received." If that is the meaning, then while the covenant may be set out in its own words, professedly as a copy, the breach should be in accordance with the meaning.

The averment that the appellees had kept and performed all the covenants on their part and at all times were willing to furnish storage for the company to the amount of one million bushels, is not an averment, or the equivalent of an averment, that they were at all times willing and ready to furnish the storage that might be necessary for a business of five millions of bushels in a year. There is no judicial knowledge of the course of business, or of the relation, or ratio, of one million at one time to five millions in a year. The company would be in no default unless the appellees would receive the grain when brought, and as the acts of delivery and receipt were to

be mutual, an averment of readiness by the appellees is necessary. 1 Chitty's Pleadings, 336. But all this, as well as the probably merely accidental use of the word " in " instead of " at " in alleging the breach, is of comparatively little importance, not going to the root of the action. By referring to the covenant it is seen that the company did not undertake for five million bushels in any one year, but for an average of five million bushels for each year during the term, with annual settlements of deficiencies and refunding of excesses, as circumstances might vary. After the first year, therefore, there could be no deficiency in any one year without taking into account the amounts of the preceding years or year, and as the year 1888 included the ninth harvest since the indenture was made, to ascertain whether the company was in default, the amounts in previous years and the average for the expired term must be found. The breach assigned on the year 1888, by itself, is no breach of the covenant for an average of the term of years. The demurrer to the declaration should, on these grounds, have been sustained, and the judgment for the appellees is erroneous.

The arguments of, and cases cited by, the appellants as to the want of the consideration, and only one party being bound, have no application to a covenant under seal. The objections on the score of public policy and *ultra vires* are easily disposed of. No circumstances appear, nor is there any reason to suppose, exist, by which the public will suffer any inconvenience, if these parties live up to their contract with each other. The company transporting grain in bulk were compelled to discharge it at the end of the carriage. Carriers must have places of their own, or access to those of others, at which to discharge freight, and take care of it a reasonable time for the consignees.

A contract very similar to this was the subject of much litigation, and enforced in Richmond v. D. & S. C. R. R., 26 Iowa, 191; 33 Iowa, 422, and 40 Iowa, 264.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*