## Chicago, Milwaukee & St. Paul Ry. Co. v. Hoyt et al.

1.   ASSIGNMENT OF ERROR—*Declaration Does Not Support the Judgment.*—An assignment of error that the declaration does not support the

judgment, is a proper assignment in any case, without regard to what may have been the course of pleading and demurring in the court below.

2. PLEADING—*Demurrer Waived by Pleading.*—A defendant who demurs, and when his demurrer is overruled pleads to the declaration, can not afterward question the decision of the court upon the demurrer, nor can he urge on appeal that a demurrer to his plea was not carried back to the declaration.

3. PLEADINGS—*Averments and Evidence.*—The minimum of allegation is the maximum required in proof.

4. JUDGMENT—*On Defective Pleading Not a Bar.*—A judgment rendered for defect of pleading, is not a judgment upon the merits, and therefore is no bar to another action upon the same contract.

**Memorandum.**—Covenant. In the Superior Court of Cook County; the Hon. JAMES GOGGIN, Judge, presiding. Declaration in covenant; demurrer to declaration overruled; judgment for plaintiff; appeal by defendant. Heard in this court at the March term, A. D. 1893. Reversed and not remanded. Opinion filed August 8, 1893.

EDWIN WALKER, JOHN W. CARY, attorneys for appellant.

OLIVER & SHOWALTER and OSBORNE BROTHERS & BURGETT, attorneys for appellees.

OPINION OF THE COURT, GARY, P. J.

These actions of covenant are brought by the appellees upon the agreement first before this court in the case between these parties, reported in 37 Ill. App. 64, and more fully stated on a second appeal in 44 Ill. App. 48. The breach there alleged was for the year 1888, but accompanying the second appeal was another just like it, except that the breach alleged was for the year 1889, and both were decided on the one opinion.

To the first count of the declaration in each of those cases has been added an amendment, following the second breach, in these words, except as to years and sums:

"And said plaintiffs further aver that the said plaintiffs, together with said Jesse Hoyt, in his lifetime, and the said Perry H. Smith, in his lifetime, did cause to be carried on at said two elevators, continuously, during the year 1881, and thence forward until the commencement of this suit, the business of receiving, storing and discharging grain, and

during said time all grain tendered for storage in said elevators, so far as the capacity of said elevators would at the time of any such tender admit, was duly received and handled therein, and all vacant storage room therein was kept ready to receive grain as offered for storage.  Yet the quantity of grain so tendered for storage at said two elevators in the course of the business aforesaid, from the first day of January, 1881, to the first day of January, 1888, was not greater than an average of 5,000,000 bushels for each year during said period, whereof the defendant had notice, on to wit, the first day of January, 1838, at, to wit, the county aforesaid.  And the quantity of grain tendered as aforesaid in the course of said business for storage in said two elevators during the year 1888, was less than 5,000,000 bushels by a large amount, to wit, by three million one hundred and sixteen thousand five hundred and twenty-one (3,116,521) bushels, whereof defendant had notice on, to wit, the first day of January, 1889, at, to wit, the county aforesaid; and though the defendant thereupon and thereby then and there became liable to pay plaintiffs the one cent per bushel on the amount of such deficiency, being the sum of thirty-one thousand one hundred and sixty-five dollars and twenty-one cents ($31,165.21), yet the defendant hath not paid the same or any part thereof."

And also in each case an additional count has been added, which contains the averments, differing only as to years and sums, that the plaintiffs (appellees) "were ready to receive in said elevators all grain that could be received therein, being an average of 5,000,000 bushels or more per year, and did in all ways keep and perform all the covenants and obligations of said contract by them to be kept and performed.

But the defendant hath not kept and performed the covenants and obligations by it to be kept and performed, pursuant to the contract aforesaid; and for breach thereof plaintiffs aver, that though from the first day of January, 1881, up to the commencement of this suit, all grains offered or tendered for storage at said two elevators were received

therein, so far as the capacity of said elevators would at the time of any such offer or tender admit, yet the total amount of grain received at said elevators from the first day of January, 1881, to the first day of January, 1889, did not exceed an average of five million bushels for each year during said period, whereof the defendant had notice on, to wit, the first day of January, 1889, at, to wit, the place aforesaid; and the total amount of grain received at said elevators during the year 1889, was less than five million bushels by a large quantity, to wit, by three million sixty-nine thousand one hundred and eight (3,069,108) bushels, whereof the defendant on, to wit, the first day of January, 1890, at, to wit, the place aforesaid, had notice; and the defendant hath not paid the one cent per bushel on said deficiency, aggregating in the whole thirty thousand, six hundred and ninety-one dollars and eight cents ($30,691.08), or any part thereof.

. And for a further breach in this behalf plaintiffs aver that the total amount of grain offered or tendered for storage at said two elevators from the first day of January, 1881, to the first of January, 1889, did not exceed an average of five million bushels for each year during said period, whereof the defendant on, to wit, the first day of January, 1889, at, to wit. the place aforesaid, had notice; and the total amount of grain offered or tendered for storage at said two elevators during the year 1889, was less than five million bushels by a large quantity, to wit, by three million, sixty-nine thousand, one hundred and eight (3,069,108) bushels, whereof the defendant on, to wit, the first day of January, 1890, at, to wit, the place aforesaid, had notice; yet the defendant hath not paid the said one cent per bushel on said deficiency, aggregating thirty thousand, six hundred and ninety-one dollars and eight cents ($30,691.08), or any part thereof.

And for a further breach in this behalf, plaintiffs aver that though more than five million bushels of grain could have been received, stored and discharged in any one year at said two elevators, if delivered and ordered out at times

which were reasonably opportune, yet the total amount of grain offered or tendered for storage at said two elevators from the first day of January, 1881, to the first day of January, 1890, was less than an average of five million bushels for each year during said period by a large quantity, to wit, by three million, sixty-nine thousand, one hundred and eight (3,069,108) bushels, whereof the defendant on, to wit, the first day of January, 1890, at, to wit, the place aforesaid, had notice; yet the defendant hath not paid the said one per cent per bushel on said deficiency, aggregating thirty thousand, six hundred and ninety-one dollars and eight cents ($30,691.08), or any part thereof."

These additions to the declarations do not, in our opinion, make the declarations good.

The agreement is so drawn that the quantity to be delivered in any one year is not fixed, but only the whole quantity to be delivered in ten years. Covenant eight would be complied with by the appellant if fifty millions were brought in the first year and none thereafter. The parties doubtless trusted the future as to the quantity that could be brought. The appellees were not bound by covenant eight to take in a bushel, but to charge a breach they must allege that they were ready and willing to receive the grain in the manner that would be a compliance with the covenant (Hough v. Rawson, 17 Ill. 588), and that could only be by being ready to receive what should be brought.

It would be consistent with the pleading that the grain had all been brought, the whole fifty millions, but so irregularly as to times and quantities that the appellees could not take it in. That irregularity was their risk.

The averment of the readiness and willingness of the appellees to receive such grain as should be brought to the elevators to be received therein, is not made, and it is assigned as error in each case that " the declaration does not support the judgment." That is a proper assignment, when true, in any case, without regard to what may have been the course of pleading and demurring below.

Order of Mutual Aid v. Paine, 122 Ill. 625, where the

innovation introduced by Stearns v. Cope, 109 Ill. 340, is, without allusion to it, retracted, relates only to a motion in arrest below. The general rule as stated in Chicago & E. I. R. R. v. Hines, 33 Ill. App. 271, is reiterated in O. & M. Ry. v. Wachter, 123 Ill. 440, and People v. City of Spring Valley, 129 Ill. 169. The appellant having first demurred and then, when the demurrer was overruled, pleaded, can not now question the decision upon its demurrer to the declaration; Beer v. Phillips, Breese, 44; nor can it now urge that the demurrer by the appellees to its plea should have been carried back to the declaration; People v. City of Spring Valley, 129 Ill. 169; but still the declaration may be questioned on error. The appellant pleaded:

1. That it had not broken any covenant.

2. That covenant eight "is *ultra vires* the defendant corporation."

3. A long plea which was demurred to as being an argumentative denial of the readiness of the appellee to receive grain.

We will spend no time in showing that demurrers were rightly sustained to these pleas. This litigation will stop only under decisions by the Supreme Court.

This court is committed to the position that covenant eight is valid, and will not reconsider that question.

In the other case, which is for the breach in 1890, the declaration does aver that the appellees "have at all times been ready, willing and able to receive, handle and store in said elevators five million bushels of grain per annum, and an average of five million bushels of grain for each year during the term of said lease, and all the grain brought to said elevators in readiness to be received therein during the term of said lease."

The latter part of the averment is elliptical. To make it clear and certain the words "which has been" or "which should be" must be inserted between "grain" and "brought." The construction most adverse to the appellees is to be put upon the language (Dougherty v. Catlett, 129 Ill. 431; Friedman v. Wabash Ry., 41 Ill. App. 270), and thus con-

strued, means that they were ready to receive what was brought, but is no averment of readiness to receive any grain, not in fact received, and the not bringing of which is assigned as a breach. The first part of the averment is wholly insufficient if our construction of the covenant is correct.

As "the minimum of allegation is the maximum required in proof," (Francis v. Stewart, 5 Adol. & El. (N. S.) 984), that averment would be sustained by evidence, in the language of the appellees, that "more than five million bushels of grain could have been received, stored and discharged in any one year at said two elevators if delivered and ordered out at times which were reasonably opportune," and therefore, as the grain could have been so received, they were in that manner "ready, willing and able."

But this court, as well as the Supreme Court of the United States, has held that the appellant did not undertake that the grain should go in or out of the elevators, but only that it should come to them in such quantity that if the total number of bushels should be divided by the number of years, the quotient should not be less than five millions. 37 Ill. App. 64; 13 S. C. R. 779; opinion filed April 17, 1893.

All the declarations are bad.

This opinion may be carped at as being inconsistent with our language in 37 Ill. App. 64, and 44 Ill. App. 48.

In considering the pleading there, the attention of the court was not directed to the form of an averment of readiness required in order to show a breach of covenant eight, but to the total absence of any averment on the subject. The question now before this court was not then in the case, and what was said *obiter* is not decision, the true construction of covenant eight being that it might be performed in a manner very inconvenient to the appellees; an averment of their readiness, in words which may well be taken to mean that they were ready if the manner should be most convenient to them, is insufficient.

If we are right, and the Supreme Court affirm our judgment, the appellees can begin new suits. "A judgment ren-

dered for defect of pleading, is not a judgment upon the merits, and therefore is no bar to another action upon the same contract." Smalley v. Edey, 19 Ill. 207; Vanlandingham v. Ryan, 17 Ill. 25.

And if we are wrong, the Supreme Court may reverse our judgments, and affirm those of the Superior Court.

The cases will therefore not be remanded. The judgments are reversed.

WATERMAN, J.

The contest in these cases is over an alleged failure to perform the agreement contained in section eight of the contract. In brief, this was that there should be received at the elevators of appellees an average of five million bushels of grain per annum during the term of the lease.

Necessarily an implied part of such contract was that appellees would be ready and able to so receive such five million bushels of grain. Clearly it was not the case that appellees, having complied with the other terms of the contract, could decline to receive any grain or any save one million bushels per annum, and then after such declination, or such declination for eleven months of the year, recover because five millions bushels were not tendered during the year.

Each party, it must be presumed, contemplated a carrying out of the contract in good faith.

We are in these actions concerned only with the contract made and what is alleged in the pleadings.

In case No. 4,774, the following averment was made:

" And the plaintiffs aver that they have been ready, willing and able to receive, handle and store in said elevators 5,000,000 bushels of grain per annum, and an average of 5,000,000 bushels of grain for each year during the term of said lease, and all the grain delivered at said elevators for handling and storage, and all the grain brought to said elevators in readiness to be received therein, during the term of said lease.

And the said plaintiffs further aver that from the date of

the completion of the said elevator, as aforesaid, upon said lots three, four and five of said block K, as aforesaid, to wit, the first day of January, A. D. 1881, and during the whole term of said lease up to and until the first day of January, A. D. 1890, and during the whole term of said lease, the average amount of grain delivered at said elevators for handling and storage was less than 5,000,000 bushels per annum.

Breach.   But the said plaintiffs aver that, notwithstanding the said defendant in said indenture of lease and agreement, covenanted that the total amount of grain delivered at said elevator for handling and storage therein and thereby, should be at least 5,000,000 bushels on an average for each year during the term of said lease, yet the amount of grain delivered at said elevators for handling and storage therein and thereby, during the year 1890 (during which year there was kept for the defendant the full storage capacity in said elevators of 1,000,000 bushels agreed upon in said indenture, and a large part of which was wholly vacant and unoccupied, and the plaintiffs during said year, and during each year of the term of said lease, were ready, willing and able to receive, handle and store in said elevators 5,000,000 bushels of grain, and all the grain delivered at said elevators for handling and storage, and all the grain brought to said elevators in readiness to be received therein), was less than the 5,000,000 bushels which the defendant covenanted should be delivered at said elevators for handling and storage during the said year, by two million eight hundred and ten thousand four hundred and nine (2,810,409) bushels, and the amount of grain delivered at said elevators for storage and handling was less than 5,000,000 bushels on an average for each and every year of the term of said lease, and for each and every year of the term of said lease prior to the first day of January, A. D. 1890, by reason of which the defendant, according to the terms of the indenture aforesaid, became and was bound at the close of said year 1890 to pay the plaintiffs for said deficiency for the year 1890 the sum of twenty-eight thousand one hundred and four dollars and nine cents ($28,104.09.)"

This seems to me to be, under the state of the pleading, a sufficient averment.

The allegation is of a readiness and willingness to receive, handle and store the quantity of grain which appellants, by section eight of the contract, agreed should be received, and there is also an averment of a readiness not only to do this, but also to receive all grain brought to said elevators for reception therein; thus negativing the idea that there might not have been tendered five million bushels per annum on an average, because that appellees had refused to receive grain offered and thus had prevented the bringing of grain that otherwise would have come. I do not think it necessary that appellees should allege and prove that they were ready to receive all the grain that might have been brought to the elevators; to enter upon the field of what possibly might have in ten years last past been done in the way of bringing grain to these elevators, is to embark upon a sea of almost limitless speculation; it is enough if appellees allege and prove a readiness and willingness to receive an average of five million bushels per annum and all grain that was brought.

The averment of readiness in Nos. 4,773 and 4,775 is in the third count alleged as follows:

"And during said time all grain tendered for storage in said elevators, so far as the capacity of said elevators would at the time of any such tender admit, was duly received and handled therein, and all vacant storage room therein was kept ready to receive grain as offered for storage." *Non constat* that more than an average of five million bushels per annum was tendered and refused.

In the fourth count the averment of readiness is, "were ready to receive in said elevators all grain that could be received therein, being an average of five million bushels or more per year. * * * And although all grains offered or tendered for storage were received therein so far as the capacity of said elevators would at the time of any such offer or tender admit, yet," etc.

It is not urged that this is to be, by a disregarding of

C., M. & St. P. Ry. Co. v. Hoyt.

unnecessary matter, taken as a positive averment of a readiness to receive an average of five million bushels per year; taking the entire count, as well as the course of pleading, together, it is evident that it was not so intended and ought not to be so considered.

Appellees have framed these counts upon their contention that the fact that their elevators were full and that they were not ready to and could not receive an average of five million bushels of grain per annum, would under the contract of the parties, be immaterial.

It was not contemplated by the parties and the contract is not to be interpreted to mean that appellees might refuse to receive grain because their elevators were full, and such refusal being known to shippers of grain, as in the ordinary course of affairs it would have been, no more grain having been offered because to do so would be useless, can recover on account of the fact that five million bushels per annum on an average were not received. The use of the word " received " instead of tendered, by itself indicates action on the part of appellees; true, they could not receive what was not offered; nor could appellants have caused to be received at these elevators what those controlling them would not take. Appellees must be ready to receive, and if they voluntarily put themselves in a position where they could not receive, they can not claim damages because of a failure to tender what, if tendered, they could not have accepted.

This action is brought, not to recover for service actually performed, but for an amount agreed to be paid in case a certain amount of business or service to be performed was not brought to appellee.

It is in principle not essentially different from an action to recover damages for a failure to give employment under a contract of hiring, save that in the present case, the damages, amount to be paid in case of such failure, was stipulated in the contract of employment.

It is therefore necessary that the plaintiff should allege and prove a readiness to perform. 2 Chitty Pl., 208.