### DAVIDSON *v.* CORNELL *et al.*

*(City Court of Brooklyn, General Term. June 23, 1890.)*

1. MASTER AND SERVANT—NEGLIGENCE.

In the construction of an elevated railroad by defendant, iron columns were erected on each side of the street. Girders, resting on the top of the columns, were stretched across the street, and two girders on each side of the street were stretched from column to column; their ends resting on seat plates placed on the transverse girders, and also resting below on iron brackets extending out from the cross-girders. Two bolts were inserted through the flanges on the longitudinal girders and the seat plates. Upon the longitudinal girders was placed a platform or traveler which carried a weight of 10 or 12 tons. The platform was moved by means of a rope fastened to a post on the platform, carried forward about 60 feet to a leading block, and then returned to a block in the center of the platform. The leading block was attached by a clamp to an inside longitudinal girder on the same side of the street as the post on the platform. Plaintiff, working on the platform, was injured through the giving away of the longitudinal girders while the platform was in motion. Plaintiff contended that lateral bracings should have been put in between the longitudinal girders; that the ends thereof should have been fastened with bolts at the bottom, as well as at the top; that one of the longitudinal girders was bent, and that, by fastening the clamp to a longitudinal girder instead of a transverse one, the structure was subjected to a strain which helped to cause the fall. *Held*, that the question of the negligence of defendant was for the jury.

**2. SAME—EVIDENCE.**

Plaintiff was properly allowed to testify as to whether he knew what the effect would be of not supplying braces to the longitudinal girders, and of leading the traveler towards the side with a rope.

**3. SAME.**

Evidence was admissible as to the usual method employed in building overhead iron structures.

**4. EVIDENCE—HEARSAY.**

Evidence of a physician, who examined plaintiff's injuries, as to statements made to him by plaintiff during the examination, was properly admitted on the understanding that it should be stricken out unless the truth of such statements should be proven.

Appeal from trial term.

Action by William S. Davidson against John B. Cornell and Henry Cornell. Judgment was given for plaintiff, and defendants appeal.

Argued before CLEMENT, C. J., and OSBORNE, J.

*Lemuel Skidmore,* for appellants.    *Charles J. Patterson,* for respondent.

OSBORNE, J. In 1888, defendants were contractors for, and were engaged in, constructing an elevated railroad on Broadway, in this city; and plaintiff was employed by them in such construction. On February 14, 1888, an accident occurred by which plaintiff was severely injured; and he brought this action to recover damages for such injuries, on the ground that they were occasioned by the negligence of the defendants. Plaintiff, on the trial, recovered a verdict for $2,500; and from the judgment entered thereon, and from an order denying a motion for a new trial, this appeal is taken.

The method of construction of said elevated railroad, in so far as it related to the points in dispute herein, may be briefly described as follows: Iron columns were first firmly inserted on each side of the street at or near the curb, transversely opposite each other, and longitudinally 50 to 60 feet apart. These columns were spanned by transverse girders, which rested on top of the columns, and were bolted to the brackets on top of the columns. Four longitudinal girders, two on each side of the street, extending from column to column, were then placed on the transverse girders, the ends resting on the cross-girders on top, on iron saddles or seat plates placed on the transverse girders for that purpose, and also resting below on iron brackets extending out from the cross-girders to receive the lower part of the ends of the longitudinal girders. Then two bolts were inserted in bolt-holes made for that purpose, through the flanges on the longitudinal girders and the seat plates on the transverse girders; these bolts being screwed up with nuts tightened by hand. After the first two or three longitudinal girders were placed in position, a structure was placed thereon, designated as a "platform" or "traveler." This consisted of a platform resting on axles, with 12 wheels,—3 wheels running on each of the 4 longitudinal girders; the wheels being about 24 inches in diameter, and having flanges on the outside about 3 inches in depth. The platform over the wheels was about 25 feet wide and 30 feet long, and was constructed of heavy timbers. On this platform was a small frame house, in which was a steam-engine, boiler, and winch, sometimes called the "Gypsy." On the front of the platform was what is called a "gallows frame," consisting of four posts secured by a cross-piece on top. The outer two of the posts were located 9 or 10 feet from the edges of the platform, one on each side; the two inner posts being on a line with the outer posts, and about equidistant therefrom and from each other. On this platform were also kept ropes, blocks, necessary tools and implements. The workmen required to work it were generally thereon, and its weight, including its contents and appliances, was about 10 or 12 tons. Wooden chock-blocks were used to keep the platform in place when it was not in motion; and there was also a rope in the rear of the platform fastened to a side girder some distance in the rear, called a "heel rope" or "check rope," which was used to prevent the platform, when in motion on a down grade, from going

too rapidly. In front of the platform, but not connected with it, was a light derrick, weighing about three tons, called the "Grasshopper," which was used for the purpose, in connection with the engine on the platform, of hoisting up the girders from the street, in order to place them in position. As its use or construction, however, had no immediate connection with the happening of the accident by which plaintiff was injured, any particular description of it here is unnecessary. When a set of longitudinal girders had been hoisted, placed in position, and bolted, the Grasshopper and platform were then moved forward another span, so as to be in position for lifting the next set of girders. The method of moving the platform was as follows: A leading block was taken forward about 60 feet, and attached by a clamp to the top of the inside left-hand longitudinal girder. A rope was fastened to one of the legs of the gallows frame on the same side as the leading block, carried forward to the leading block, passed through it, and then returned to a block in the center of the platform, and thence to the drum of the Gypsy, where a turn or two was taken, and the end held behind the drum by a workman who took in the slack rope as the engine revolved the drum, and drew the platform ahead. This rope was called the "traction rope." The elevated railroad had been constructed by the defendants for a distance of about three-fourths of a mile. Plaintiff, who had previously worked for defendants, had been employed on the traveler and about the construction for about two months prior to February 14, 1888. On that day, while the traveler was being moved forward in substantially the manner above described, and when it was about half-way across a 60-foot span, the four longitudinal girders on which it was moving suddenly gave way, and fell into the street, carrying with them the platform and the plaintiff, who was standing on it at the time, thereby causing the injuries of which he complains.

Plaintiff's contention on the trial was that the structure was insecure and unsafe, and that the method of construction was a dangerous one, and that defendants neglected the usual precautions to strengthen it, and make it safe, before subjecting it to the strain of the heavy weight that was put upon it. He claimed that lateral bracings should have been put in between the longitudinal girders; that the ends thereof should have been fastened with bolts at the bottom, as well as the top, in the bolt-holes provided for that purpose; that one of the longitudinal girders over which the platform was passing at the time it fell was bent; and that, by reason of fastening the clamp to a longitudinal girder instead of to a transverse girder, the structure was subjected to a dangerous lateral strain, which helped to cause its fall. Evidence was introduced on the part of the plaintiff to sustain the foregoing contentions.

At the close of plaintiff's case the learned counsel for the defendants moved to dismiss the complaint on the grounds that no negligence had been shown on the part of the defendants; that the negligence, if any, was that of fellow-servants; and that the plaintiff assumed the risks of his employment. This motion was denied, and defendants' counsel excepted. We think the motion was properly denied. Enough had been shown by the plaintiff to require the submission to the jury of the question as to whether defendants had been negligent in the duty that they owed to plaintiff. They were bound to take all usual and reasonable precautions to make the structure secure, and to insure, as far as they reasonably could, the plaintiff's safety; and, unless they had done so in the first instance, even the negligence of fellow-workmen of the plaintiff would not excuse them. While it is true that plaintiff assumed the risks of his employment, yet it is well settled that the risks assumed must be patent and apparent. To hold that, in the erection of a structure of this character, plaintiff must have been, or ought to have been, aware of the results that would naturally follow each step taken in the course of the work, would be crediting him with the possession of a knowledge that no one would expect from a workman of his grade of employment. He had a right to rely

on the superior knowledge of his employers as to all those matters in which he could not foresee what might happen in following out the plan of construction devised by them. At the close of the testimony the motion to dismiss was renewed, denied, and an exception taken. We cannot see that the submission of the defendant's testimony had so utterly refuted the testimony on the part of the plaintiff as to authorize the learned trial judge to take the case from the consideration of the jury. All the contentions of the plaintiff had been controverted and put in issue by the defendant's evidence, but there was no such preponderance of testimony in favor of the defendants as would have justified the court in dismissing the complaint. The testimony on both sides was voluminous, and on many points contradictory. It was just such a case as called for the verdict of a jury on the questions involved, and we think it would have been error to have held otherwise.

At pages 54 and 55, plaintiff was asked if he knew what the effect would be if braces were not supplied to the longitudinal girders, and also what the effect, if any, would be to lead the traveler towards the side with a rope; and he was allowed to answer these questions, under objections and exceptions. We think the questions were properly allowed. Plaintiff had a right to show, if he could, his ignorance of the effects arising from the matters inquired of. If he knew of the effects, it might reasonably be claimed that they were included in the risks of his employment, or that he was guilty of contributory negligence. Those questions, and plaintiff's answers, went to show that the risks, if any, arising from the alleged defects inquired about, were not patent, and that plaintiff knew nothing of the consequences that might ensue therefrom.

Various other exceptions were taken by the learned counsel for the defendants to the admission of the evidence of experts as to the usual methods adopted in the building of overhead iron structures, and as to the precautions it was customary to adopt. Plaintiff claimed that defendant's negligence consisted in part of a failure to adopt usual and well-known precautions to insure safety. We think, therefore, that this class of evidence was admissible to enable him, if he could, to sustain his contention.

Plaintiff was examined by Dr. Corey on the Saturday previous to the trial, and the doctor was called as a witness on the trial as to the extent of plaintiff's injuries. The learned counsel for the defendants objected to the admission of any statements made in the course of the examination by plaintiff to Dr. Corey. This evidence was admitted by the court with the understanding that it would be stricken out unless the truth of such statements was proven; and plaintiff subsequently was recalled, and swore that the statements so made by him to the doctor were true. We think that this was a proper disposition of the objection, and preserved all defendants' rights. These statements of plaintiff were incidental to the medical examination, and contributed to its completeness and efficiency. We are aware that similar statements made to a layman have heretofore been held inadmissible on the ground, in part, that they were hearsay, and in part that it afforded an opportunity to unduly exaggerate the injuries complained of. These objections, however, were removed by the plaintiff's testimony that the statements made by him to Dr. Corey were true.

The testimony given by the witness Salisbury on cross-examination (pages 213–215) as to the manner of constructing the Sands-Street road after the accident was properly admitted. Counsel, for defendants had on the direct examination examined the witness as to the construction of that road, (folio 625,) and the questions put by plaintiff's counsel constituted a fair cross-examination on that point.

This case was submitted to the jury in a lucid and exhaustive charge, which, in our opinion, fully and fairly covered the legal rights and duties of the plaintiff and of the defendants. Without taking up *seriatim* the various requests to charge made by the learned counsel for the defendant which were

refused, we think no error was committed in any of such refusals. The sub-ject-matter of most of them had already been covered by the charge of the learned trial judge, while others embodied or were based on facts assumed to be undisputed, but as to which there were disputes. None of the other ex-ceptions in the case seem to us to call for any special notice or discussion.

The very elaborate brief of the learned counsel for defendants has received our careful attention and consideration, but we find ourselves unable to agree with him that the learned trial judge committed any error upon the trial, or that the appellants were prejudiced in any way. We are accordingly of the opinion that the judgment and order appealed from should be affirmed. Judg-ment and order denying motion for new trial affirmed, with costs.