“ McAdam, J.
There is no proof of defective con *295 struction of the building, nor of any violation of law. There is no evidence of intentional overloading by the defendant. The act of overloading, if done at all, was done by Flynn, the deceased, and the other workmen, who, by their own indiscretion, brought upon themselves the trouble of which complaint is now made. They cannot charge the consequences upon the defendant. In order to hold him, it is necessary to prove affirmatively that the injuries were caused by the negligence of the defendant, and that deceased was entirely free from any fault contributing to the accident.
“ It does not appear that the defendant did anything he ought not to have done, or failed to do anything he ought to have done, or that any conduct of his resulted in injury to any one. Negligence is not to be inferred from the mere fact of an injury or an accident, hut must be affirmatively alleged and proved. The proofs show that if Flynn and his fellow-workmen did not bring the misfortune upon themselves by their indiscretion, they, by their conduct, at least contributed in bringing about the result. The overloading was done by them and by no one else. They do not appear to have been dominated, directed or controlled by the defendant.
“ The evidence is insufficient to establish the charge of negligence on the part of the defendant, and the complaint in consequence must be dismissed.
“ A party overloading a building is liable to any one injured by the overloading, but the right to recover does not belong to one of the overloaders, if he is particeps criminis. If the overloading resulted from indiscretion, it was the want of judgment of the men, of whom Flynn was one; they were employes of the defendant, they were fellow-workmen of Flynn, and it is elementary law that a master is not liable for the errors, mistakes, want of judgment or negligence of fellow-workmen.
“ The complaint will, therefore, have to be dismissed.”
H. ’Warren Love, attorney, and Paul Jones of counsel, for appellant argued:—
I. The dismissal of the complaint having been made upon the defendant’s motion after the close of the plaintiff’s case, without any testimony whatever, on defendant’s behalf the facts contained in the record must be taken as true for the purpose of this appeal, and the appellant is entitled to have every doubtful fact found in his favor. Colegrove v. N. Y. & N. H. R. R. Co., 20 N. Y., 491; see also Wylie v. Marine National Bank, 61 Ib., 415.
II. It having been shown that the accident, through which the death of the plaintiff’s intestate was occasioned, was caused by overloading the floors of the building where he was at work, and that he was there in the performance of the work assigned him by the direction of the defendant’s foreman, and was, at the time, under the personal supervision of the defendant himself, it is submitted that there was sufficient evidence of negligence on the defendant’s part to justify the court in granting the plaintiff’s motion to send the case to the jury, notwithstanding the ruling already made upon the defendant’s motion to dismiss. While indeed the master is not an insurer of the safety of the place where the servant is required to work, not of the tools, implements and appliances given him for the performance thereof ; it is nevertheless true, that the law imposes upon the master certain duties and obligations respecting the servant, by which he is hound to use reasonable care to see that the place where the servant is assigned to work is safe. McGovern v. C. V. R. R. Co., 123 N. Y., 280; Pantzer v. Tilly Foster Mining Co., 99 Ib., 368; Davidson v. Cornell, 10 N. Y. Supp., 521. It is therefore the master’s duty to furnish all reasonable means to secure the safety of his employes. Pantzer v. Tilley Foster Mining Co., supra. ' So, an employer being bound to furnish a safe place and suitable instrumentalities in and *297 by means of which to do the work assigned to an employe, it is wholly immaterial, upon the question of the master’s liability for damages, by whom ■ the place was assigned, or the instrumentality was furnished or constructed, so long as it was assigned or furnished in the master’s behalf. Ryan v. Miller, 12 Daly, 77. Hence, where the direction of the work is given to a foreman, he represents the master, and the latter is liable for any injury to an employe, resulting from a want of care in his directions. Sheehan v. N. Y. Cent., etc., R. R. Co., 91 N. Y., 332. And the master’s duty to make suitable provisions for the safety of employes cannot be delegated. Fuller v. Jewett, 80 N. Y., 549; Flike v. R. R., 53 Ib., 549; Bushby v. R. R., 107 Ib., 37. And where it is shown that an employe is killed without any fault on his part, in consequence of the breaking of an appliance, or by reason of the defective construction ■ of the place where the work is done, or by any imperfection in the tools furnished by the master, the case can only be taken from the jury, and a nonsuit ordered, where there is room for doubt, upon the evidence, not only that the master used due care in the construction or selection of the place, appliances or tools, in the first instance, but also .that he used the further care that they should continue to be safe. Ficks v. Sweney M’fg Co., 58 Hun, 611. And where in such case the accident and the injury resulting therefrom is proved, negligence is presumed to such an extent, as to warrant the submission of the case to the jury. Flynn v. Gallagher, 52 N. Y. Super. Ct., 524; Dobbins v. Brown, 119 N. Y., 188.
HI. While the record shows no positive proof of the absence of contributory negligence upon the plaintifE’s part, the rule, that the plaintiff must show that he has not contributed to the accident, by any act of negligence on his part, in order to hold the defendant liable for damages occasioned by his negligence, does not necessarily impose upon him the duty to furnish positive *298 proof of the absence of such negligence; but, in any event, the rule does not apply to the facts of the case at bar. In actions for the recovery of damages for personal injury, the character of the defendant’s negligence may be such as to prove the whole issue. It cannot, therefore, be said, as a universal rule, that it lies upon the plaintiff to prove affirmatively that he was not guilty of negligence, or upon the defendant to prove the contrary, in order to establish his defence. The absence of any fault may be inferred from the circumstance. Johnson v. H. R. R. R. Co., 20 N. Y., 65 ; Gillespie v. City of Newburgh, 54 Ib., 468. The mere fact, that the plaintiff’s intestate was at the place where he met his death obeying the orders of the defendant is not of itself contributory negligence; Doyle v. Baird, 6 N. Y. Supp., 517, and the question presented being one of care upon his part, the case should have gone to the jury. Weber v. N. Y. C. & H. R. R. R. Co., 58 N. Y., 451. It is only where it clearly appears from all the circumstances, or is proved by uncontroverted evidence, that the plaintiff has by his own acts or neglect contributed to the injury, that the court can take the case from the jury, and nonsuit the plaintiff; Massoth v. Canal Co., 64 N. Y., 529 ; Weber v. R. R., supra, and a nonsuit should never he granted, where any possible inference can be drawn from the testimony which would relieve the plaintiff from the charge of contributory negligence. Stackus v. N. Y. C. & H. R. R. R. Co., 79 N. Y., 464. In the application of these principles to the facts of the present case, it appears that the ruling of the Court of Appeals, in the recent case of McGovern v. The Central Vermont & H. Railroad Company referred to above, is conclusive to the rights of the plaintiff upon this appeal. The principles enunciated in the case of Cordell v. New York Central River Railroad Company, 75 N. Y., 330, do not apply to the present case, because in the case at bar there was no testimony in defendant’s *299 behalf. negativing the plaintiff’s proof, and there is nothing left to speculation. Whatever, therefore, maybe said of the strength of the plaintiff’s proof, it is certain that there was enough to warrant the conclusion that the accident was occasioned, either through the negligence of the defendant alone, or through the negligence of the plaintiff and the defendant jointly, in which case the rule is well settled that the master is liable. Anthony v. Lesset, 105 N. Y., 591. And where it has been shown that the injury might have been attributed to two causes, i. e., the danger of the place and neglect of fellow-servant, the case should always be submitted to the jury. Cullen v. Norton, 5 N. Y. Supp., 523.
IY. The learned trial judge erred in finding that there was “ no proof of defective construction of the building,” and in refusing to send the case to the jury on that account. The plaintiff’s proof was direct, that the beams intended to support the floors were of a capacity of 75 pounds to the square foot with a sustaining capacity of 225 pounds; that prior to and just before the accident the defendant had accumulated some 12-000 or 13,000 bricks upon the fourth floor, besides a suitable supply of mortar to be used in laying them, upon a scaffold seven or eight planks square. Assuming that these planks were of the full length, and one foot wide, we have a scaffold of 8 x 12 feet, upon which all this material was not only allowed, but directed to be accumulated, and calculating its weight at the smallest amount (12,000 bricks) stated in the evidence (the weight of each brick being four pound), and not taking into consideration the mortar at all, it will be seen that upon the 96 square feet of scaffolding provided by the defendants, for holding this material, there was the exorbitant weight 48,000 pounds, or 500 pounds to the square foot of surface, or over twice as much as there ought to have been. And further, that this enormous *300 amount of heavy building material was placed there by direction of the defendant, through his foreman, because he had determined to dispense with the use of the elevator after that day, and wanted to get all the material up before it was taken away. Upon this testimony and upon a personal examination of the premises, after the accident made before any of the debris had been removed, Mr. Thomas J. Brady, Superintendent of Buildings for the city of New York, a man who had had an experience of twenty odd years in the building trade, testified as an expert, positively, that the cause of the accident was “ piling material on the floors—overloading them.” Whether, therefore, the defendant had been technically guilty of a breach of a positive statute in erecting the building in the manner in which it was done, is of no consequence, since in whatever manner the work was done, he owed a duty to the plaintiff’s intestate, with which he failed to comply, when he directed the floors to be overloaded, and saw that it was done.
V. The death having been caused, as the evidence shows, by a neglect of duty, on the part of the defendant, the question of intent could have had no effect upon his liability; hence the court erred in dismissing the complaint upon the ground that there was no evidence of intentional overloading by the defendant.
VI. It is no" defence to this action that the injury complained of occurred in the course and conduct of the business in which the plaintiff’s intestate was employed (Booth v. Boston & Albany R. R. Co., 73 N. Y., 38), nor that the injury occurred through the negligence of his fellow employes; and it was error to dismiss the complaint on these grounds. Courtney v. Cornell, 49 N. Y., Super. Ct., 286; Pantzer v. Tilly Foster Iron Co., 99 N. Y., 369. This is so, because the master is only relieved of his liability to his servants from the result of injuries occurring in the course of business, where the defects complained of are apparent. De Forrest v. *301 Jewett, 23 N. Y., 264; Davidson v. Cornell, 10 N. Y. Supp., 521. And the master, owing a duty to tlio servant to furnish him safe and adequate instrumentalities for the performance of the work assigned, cannot escape liability in a case where the action is based upon a breach of duty in this respect, on the ground that the negligence complained of was that of a fellow-servant. Cone v. Railroad Co., 81 N. Y., 206. The rule is general, that where one enters the service of another, he takes upon himself the ordinary risks of the employment, but it has its exceptions, and is, therefore, not of universal application. Thus, while he assumes all the ordinary risks incident to the employment, he does not take upon himself the hazard of extraordinary risks, which are added by the failure of the employer to perform the duty enjoined upon him by law. Rogers v. Lyden, 137 Ind., 50.
VII. Three things, says this court, must be proved in order to entitle plaintiff to recover in an action of this character, viz.: (1) that the machinery or appliance was defective; (2) that the master had knowledge or notice of the defect; (3) that the servant did not know, and had not equal means of knowledge with the master. Reordan v. Com. Card Co., 51 N. Y. Super. Ct., 134. It is respectfully submitted that this case falls within the principles of the rule thus laid down, because the fact is that the floor supporting the scaffold where the deceased was at work was defective, in that it was not built to sustain the weight put upon it by direction of the defendant, who knew or ought to have known that it was being overloaded. Such being the case, the defendant cannot shield himself from liability by claiming that his attention was not particularly called to its imperfect condition; it was his duty to know the condition of the place where he put his employes to work, and he was guilty of want of care in failing to discover it. Klupp v. Ice Co., 15 N. Y. Supp., 597. So, in an *302 action for the death of an employe, caused by a defective appliance furnished by the employer, if the defect was one of construction, it is not necessary to allege the employer’s knowledge of it. C. & E. I. R. R. Co. v. Heins, 33 Ill. App., 271. The relation of the defendant to the plaintiff’s intestate establishes the fact that he did not know and had not equal means of knowing of the defect complained of with the master. He was a common laborer—blindly directed to do certain manual service—while the defendant was the builder of the house in question, familiar with its plans, and knew or ought to have known the capacity of the floors to sustain a given amount of material; and it was his duty to have directed its construction and the labor of the deceased, so that no harm should have come to him, in the manner and under the circumstances of this case.
VIII. In conclusion, the contention is made, that the courts of this state have in numerous instances held that where the master employs servants in the building of houses and other structures, it is his duty to furnish safe and proper scaffoldings and supports, for the use of the servants. Green v. Bants, 48 N. Y. Super. Ct., 156; Pantzer v. Tilly Foster Iron Co., 99 N. Y., 368; Davidson v. Cornell, 10 N. Y. Supp., 811. And the overloading of a floor is negligence for which the master is responsible (Dillion v. 6th Ave. R. R., 48 N. Y. Super. Ct., 283) to a servant injured thereby. Metzgar v. Herman, 12 Week. Dig., 182; see also, Marsh v. Chickering, 101 N. Y., 400; Probst v. Delamater, 100 Ib., 266; Banzing v. Steinway, 101 Ib., 522.
Edgar Whitlock, attorney and of counsel, for respondent, argued:—
The court granted the motion of the' defendant to dismiss the complaint, and denied the motion of the plaintiff that the case be submitted to the jury, to both of which rulings plaintiff excepted, and on these excep *303 tions the appeal mainly rests. It is not here intended to discuss the propositions of law laid down by the court below (because they are believed to be elementary in character), but to proceed at once to a consideration of the evidence to sustain the conclusions of the learned justice as set forth in his opinion. While the plaintiff’s intestate was working on the fourth or fifth floor of the building in question, the floor gave way and, with the matter upon it, fell upon the floor beneath, and carried it and all the other floors down to the cellar. The deceased fell with the floors and was thereby killed. There was no direct evidence as to the cause of the floor giving way. The theory of plaintiff’s case (as developed by the testimony) was that the giving way was caused by overloading. It appears that there was no defect in the building itself; “ the building was in first-class condition ; the walls were in first-class condition prior to the accident ; all the conditions of the permit issued by the building department had been complied with to the letter.” Assuming that overloading was the cause of the accident, it still remains to he established: (1) That the overloading occurred because of defendant’s negligence; and (2) That the deceased did not by his own negligence contribute thereto. To the testimony of the witness McKeon alone must we look for evidence on these points. His story, in brief, is as follows: The deceased (Flynn), with the witness McKeon, and Dunkin and Hart, were working in the defendant’s employ at the time of the accident on the fourth or fifth floor unloading the elevator of the brick and mortar it was bringing up, which they dumped on the floor. They were taking the stuff off the elevator when the defendant came around and ordered them.to stop the machine, saying they had got enough stuff on that floor. They took the stuff off the machine, and the elevator went down, and just after they emptied their hods the floor went down, and that was the last the witness knew. There *304 is no question here as to whether or not the deceased was supplied with proper tools, or implements, or whether machinery was safe or sound; nor whether there was a'ny defect in the building or at the place where the deceased was required to be, but simply and solely whether, by order of the defendant or those for whose acts he is liable, a load was imposed on the floor such as it was not intended to bear, and, if so, whether such order is to be classed as a mistake in judgment for which defendant is not liable, or as so gross an oversight of existing and well ascertainable facts as to constitute negligence. It nowhere appears under what orders the deceased and his colleagues were working, nor are any facts stated from which an inference can be drawn, unless from the statement of the foreman that he wanted to get enough stuff on every floor to raise the front a story higher. They had received no orders from defendant personally as to how much stuff was to be carried up. They seemed to have been left to their own judgment, and they only stopped when the defendant came around and ordered them to stop, and they were obeying this order when the floor fell. There is, therefore, no evidence to show that they were acting under either of the classes of orders above referred to. There is no question of a concealed or hidden danger involved, nor one where the master had opportunities of knowledge not open to the servants. On the contrary, the servants alone appear to have been on the particular spot; they and they only were doing the work ; they had the best opportunity for knowing how much was being unloaded, and consequently for knowing when the danger limit was reached. The matter was entirely in their own hands. They might at any moment have stopped, saying, “ It is not safe to load any more material on this floor,” and to have done so without in any way causing the master annoyance or displeasure. Clearly, they (of Avhom the deceased was one) “ by their conduct at least *305 contributed in bringing about the result. The overloading was done by them and no one else. They do not appear to have been dominated, directed or controlled by the defendant.”
By the Court.—Gildersleeve, J.
On or about the 25th day of August, 1888, the defendant, as contractor and builder, was erecting and superintending the construction of a house on premises in West 83d street, in this city; and plaintiff’s intestate, Charles Flynn, was employed by the defendant, as a day laborer, on this building. The particular service in which the deceased was engaged, at the- time of the accident hereinafter referred to, on the day aforesaid, was the removing of brick and mortar, contained in hods, from an elevator machine, which carried the materials from the ground up to the several floors above. At the time of the accident by which plaintiff’s intestate met his death, he was at work on the fourth floor in taking the hods from the elevator and dumping the contents upon a scaffold near the elevator, for use in building the front walls of the house. While said intestate was so employed, the floor beams gave way, and precipitated the materials that had been deposited near the elevator, as aforesaid, upon the floor beneath, and carried it and all the other floors below, with their contents, down to the cellar. The deceased fell with the floors, and was thereby killed. This action was brought to recover damages for the death of the plaintiff’s said intestate, on the ground of the defendant’s negligence and want of care and skill in the construction of said building, and in carelessly overloading the beams and girders of said building with mortar, brick and other building materials. When plaintiff rested, the court below dismissed the complaint on the ground that there was no evidence of any negligence on the part of the defendant, but that whatever negligence there was attached to the plaintiff’s intestate and his fellow-workmen.
*306 The dismissal of the complaint having been made upon the defendant’s motion after the close of plaintiff’s’ case, without any testimony whatever on defendant’s behalf, the evidence contained in the record must be taken as true for the purposes of this appeal, and the appellant is entitled to have every doubtful fact found in her favor. Coldgrove v. N. Y. & N. H. R. R. Co., 20 N. Y., 494 ; Wylie v. Marine National Bank, 61 Ib., 417.
testimony shows that the defendant was present and supervised the work, at the time of the accident. The only inference to be drawn from the evidence as to the cause of the accident, is that it was occasioned by overloading the fourth story with brick and mortar, which were brought up from the ground in the machine above referred to, under orders from defendant or his foreman and agent, with the knowledge of defendant. It does not appear that the quantity of material to be placed on the fourth floor, or the other floors, was in the discretion of the laborers, of whom the intestate was one, and therefore that the overloading was an error of judgment on the part of said laborers. The intestate, with his immediate co-workmen, was on the fourth floor at the time of the accident, and these men were charged with the duty of taking from the elevator, at that point, such materials as were sent up in the hods, presumably by direction of the defendant or his foreman. The defendant and his foreman must be presumed to have known the quantity of brick and mortar necessary to complete the work. The evidence warrants such a finding of fact. McKeon, a fellow-workman with intestate, swore that the defendant’s foreman told them (the laborers) “ that was the last day to run the machine, and that he wanted to get enough stuff on every floor to finish the front, so as to raise it a story higher; and that the machine would only run that day, and that there would not be a day’s work for the machine.” McKeon further testifies that just before the accident, the defendant came around and *307 said, “ Boys, you have got enough stuff on this floor— enough to finish the building—just stop the machine.” The intestate and the other laborers on the fourth floor, where the defendant gave these instructions, took the materials off the machine ; the elevator returned to the ground floor, and, just after these laborers had emptied their hods, the floor went down, carrying the intestate with it to his death. This state of facts did not justify the conclusion of the learned trial judge that, although an injury resulting from the overloading of a building might create a liability, the right to recover could not belong to plaintiff, for the reason that the intestate was one of the overloaders and a particeps criminis. It was not to the want of judgment on the part of the men, of whom intestate was one, that the accident was due. If the accident was the result of such a want of judgment, plaintiff has no cause of action, since it is elementary law that a master is not liable for the errors, mistakes, want of judgment or negligence of fellow-workmen. The intestate appears to have been free from contributory negligence ; he, with his fellow-workmen, was obeying the orders of the defendant, or his agent; the defendant was present, and saw the work going on. The affirmative proof indicates clearly that the intestate and his fellow-workmen did not bring the misfortune upon themselves by their indiscretion. True, they did the work; but it was done by the direction and under the superintendence of the defendant, by whom it appears they were dominated and controlled. The intestate was merely carrying out the directions of the defendant. There was no outward indication of the impending danger to warn the intestate of the peril that was before him, that called upon him for any effort to escape therefrom. Had he insisted upon leaving the floor, or refused to obey the orders of his superiors and continued the unloading of the machine, as he had been directed to do, he would have been guilty of disobedience that *308 would, perhaps, have warranted the defendant in discharging him. Thé work upon which the intestate was engaged was not what is known as extra-hazardous in its nature, calling for the exercise on the part of the intestate of more than ordinary prudence and care. It was manifestly an accident such as in the ordinary course of things does not happen, if those who have the management use proper care. The danger, as we shall subsequently show, was one of which the master had opportunities of knowledge not possessed by the laborers in his employ. From a careful analysis of all the evidence, it affirmatively appears that the intestate did not contribute in any degree to the accident that resulted in his death.
This question remains to be discussed, namely : Was there sufficient evidence of negligence on the part of the defendant to entitle the plaintiff to have the case submitted to the jury ? It is incontestable that the accident was caused by piling too much material on the floors, and especially upon the fourth floor, where the beams or floor timbers first gave way. There is no question here of a failure on the part of the defendant to supply proper tools or implements, nor any question as to whether the machinery was safe or sound; nor whether there was any defect in the building. The inspector of buildings testified that he examined the building the day before the accident, “ that the building was in first-class condition—the walls were in first-class condition—all the conditions of the permit, issued by the building department, had been complied with to the letter ; ” and that the accident was due to overloading the floors. The question the defendant had to meet was this: Was there placed upon the fourth floor, by order of defendant, or his foreman, a weight of materials in excess of the weight the floor was intended to, or could reasonably be expected to bear ? If so, was such order a mistake in judgment, for which defendant is not liable, or a *309 gross oversight of existing and well ascertainable facts that constitute negligence ? To put it more tersely, was the use of the premises by defendant so unreasonable as to evince negligence ? If there was any evidence to sustain this proposition, and we are correct in holding, as we have already done, that the intestate was free from contributory negligence, it was the duty of the learned trial judge to submit the case to the jury. A master owes the duty to his servant of furnishing a safe and proper place in which to prosecute his work, and, when they are needed, the employment of skillful and competent workmen to direct Bis labor and assist in the performance of his work. This duty cannot be delegated by a master to a servant of any grade so as to exonerate the master from responsibility to another servant who has been injured by its non-performance. Pantzar v. The Tilly Foster Iron Mining Co., 99 N. Y., 368.
Due care had been taken by defendant, as appears from the evidence, in the construction of tBe building, and there is no evidence of any hidden and internal defect therein that was the cause of the collapse of the building and the resulting injury; but the evidence, uncontradicted, warrants the conclusion that there was an overloading of the floors, by order of defendant, which was wrongful in a legal sense, and which amounts to a specific act of negligence in the use thereof. The defendant was entitled to use the floors and employ his servants upon and about the same by imposing upon said floors quantities of materials of such weight as the strength of the floor timbers could reasonably sustain. Within the limits of such reasonable use, the only limit was the capacity of the floors and the building. It might be assumed that the defendant, being an experienced builder and an intelligent man, had specific knowledge of the strength of the floor timbers he used, and approximately of the strength of the building generally. This, however, is not necessary. The evidence indicates *310 hozo the defendant knew the capacity of the floor timbers. The superintendent of buildings swears that “ the floor beams, where the materials were, were calculated for strength to carry the weight of the floor, so that when you reached an average of 225 pounds to the square foot of weight placed upon that floor, then you would reach what we term a breaking point—each floor was constructed for 75 pounds to the square foot, with a factor of safety of 3.” It further appears from the evidence that just before the accident, by the personal orders of defendant, or his foreman, there had been accumulated some twelve or thirteen thousand bricks upon the fourth floor, besides a suitable supply of mortar to he used in laying them, upon a scaffold 7 or 8 planks square. The plaintiff should have shown the exact or proximate size of these planks; but, assuming that they were planks of the size ordinarily used for the purpose to which these were subjected, we have a scaffold or floor space of about 8 by 12 feet, upon which all this material had been accumulated. It was testified that each brick weighed about 4 pounds; and if we leave out of consideration the mortar, which was evidently no small factor in weight, we find that the floor space in question was subjected to a weight of about 500 pounds to the square foot of surface—more than twice the weight that the superintendent of buildings testified would bring the strain up to a breaking point. This was, clearly, such an oversight on the part of the defendant, who was present and directed and saw the condition of affairs, of existing and well ascertainable facts as to constitute negligence. The defendant was not warranted in ascertaining the full capacity of the floor as to strength by actual use in piling materials thereon. He must be presumed to have had a fair and reasonable knowledge of the business in which he was engaged, which includes a knowledge of at least the approximate strength of the floor timbers he had placed *311 in the building, and a knowledge of the approximate weight of twelve or thirteen thousand bricks and a quantity of mortar that he had accumulated upon that floor.
The case at bar is not analogous to Dillon v. Sixth Avenue R. R. Co., 48 N. Y. Super Ct., 283, where an injury resulted from the giving way of a floor that had been overloaded, and in which case the general term of this court held “that the defendant was justified in ascertaining the capacity of the floor and building as best he could by actual use in the course of his business.”
While we rest our decision upon the grounds above set forth, we may add that the case under consideration is not unlike the case of Green v. Banta, 48 N. Y. Super Ct., 156. In that case, the plaintiff and other servants of the defendant were dumping bricks upon a scaffold when it fell, and plaintiff was injured thereby. The general term of this court held, in that case, “ that it was the duty of defendant to furnish for plaintiff to work upon properly built scaffolding, and any negligence of the foreman or other workmen, employed by defendant, to erect the same was defendant’s negligence, and not that of a fellow-workman of plaintiff.” It also held “ that the fact that the scaffold gave way was prima facie evidence of negligence.”
For the reasons above indicated, we are of opinion that it was the duty of the learned trial judge to submit the case to the jury.
The judgment appealed from is reversed, and a new trial granted, with costs to abide the event.
Freedman, P. J., and Dugro, J., concurred.