# THE CITY OF CHICAGO

*v.*

# MARY MCGRAW.

1. PARTY PLAINTIFF AT LAW — *when the wife may sue alone for injury to real estate.* Where a husband, being the owner of real estate, together with his wife, in 1859, conveyed the same to a son, who, in 1863, conveyed the same to the wife, who was his mother, and she afterward controlled the same in her own right, it was *held,* that the wife could maintain an action in her own name, for an injury to the property, without joining her husband in the action as a plaintiff.

2. MARRIED WOMAN — *what regarded as her separate property, under act of* 1861. Where a husband and wife conveyed land of the former to their son, and he conveyed the same back to the wife, it was *held,* that the wife acquired the title from a person other than her husband, and that the good faith of the transaction could only be questioned by creditors of the husband. A trespasser cannot question the wife's right to the land as her separate property, in an action by her against him.

3. MUNICIPAL CORPORATION — *when liable for trespass.* Trespass lies against a municipal corporation in a proper case; but to render it liable in any case for torts committed by persons claiming to act for it, or by its authority, it must appear they were expressly authorized to do the act, by the municipal government, or that they were done *bona fide,* in pursuance of a general authority to act for the municipality on the subject to which they relate, or that, in either case, the act was adopted and ratified by the corporation.

4. Where the city of Chicago was sued in trespass for an injury to a lot of the plaintiff, caused by widening and deepening a canal, which the

city was empowered to do, but no ordinance of the city was introduced showing that the city had undertaken to exercise the power, and the written contract of the parties doing the work which caused the injury was not produced on the trial, and there was no proof that the city directed the work, or adopted and ratified it afterward, it was *held,* that a recovery against the city could not be sustained, for want of sufficient proof that the trespasses were committed under the direction, or by the authority, of the city.

5. SAME :— *whether city of Chicago, in exercising power of widening and deepening canal, was the agent of the State.* Under the act of February 16, 1865, authorizing the city of Chicago to widen and deepen the Illinois & Michigan canal, for the purpose of cleansing the Chicago river, in exercising the powers conferred, the city is not to be regarded as the agent of the State, and, therefore, not liable for an injury caused to private property.

6. TRESPASS — *when title to real estate need not be proved.* In trespass to real estate in the actual possession of the plaintiff, where no effort is made by the defense to show title in any one else, proof of title other than of possession is not necessary.

7. SAME — *title deed admissible in evidence to show the right claimed by possession.* In trespass to real estate, the deed to the plaintiff is competent evidence, as tending to prove title in plaintiff, and show what right he claims by his possession of the property.

8. PAROL EVIDENCE — *to show what lands were reserved from sale by the United States.* Parol evidence is not competent to show that no sales were made by the government within a reservation claimed to have been made for a certain purpose, as the government records furnish the proper and best evidence of what lands were sold and what reserved.

9. RESERVATION OF LAND FOR CANAL — *party claiming must show performance of conditions imposed.* Where it is sought to defeat the right of a party in possession of land, claiming to own the same under the act of congress of March 30, 1822, giving and reserving the same to the State of Illinois, for canal purposes, it must be shown that the conditions upon which the grant depended were complied with.

APPEAL from the Circuit Court of Cook county; the Hon. LAMBERT TREE, Judge, presiding.

Mr. T. LYLE DICKEY, for the appellant.

Messrs. HOYNE, HORTON & HOYNE, for the appellee.

Mr. Justice Scholfield delivered the opinion of the Court:

This was trespass by the plaintiff in the court below, and now appellee, against the defendant in that court, and now appellant, for injuries done to her property, under the direction of the defendant, in excavating, widening and deepening the Illinois & Michigan canal, at Canal Port, in Cook county. There was evidence on the trial that the title to the property claimed to have been injured was originally in the name of the plaintiff's husband, John McGraw; that he and she joined in a deed, and conveyed it to their son, Peter J. McGraw, on the 18th of April, 1859, and Peter J. McGraw afterward, and on the 31st day of March, 1863, reconveyed the property to the plaintiff. The plaintiff's husband, at the time the alleged injuries were committed, and at the time of the trial, was still alive, residing with her, and their marital relations had never been dissolved. It is insisted that he was, therefore, a necessary party to the suit; that the plaintiff did not acquire the property in good faith from a person other than her husband, and consequently cannot claim it as her sole and separate property, under the act of February 21, 1861, relating to the separate property of married women.

The deed from the plaintiff's husband and herself to their son, Peter J., on the 18th of April, 1859, conveyed whatever title her husband then had in the property to Peter J., and his deed to the plaintiff, on the 31st day of April, 1863, invested her with that title. Whether the controlling motive in these transactions was to defraud creditors of the plaintiff's husband, or to place the title, by what was supposed to be the necessary legal steps, in the plaintiff, it would seem to be quite certain that he retained no interest, either legal or equitable, in the property. He could not be heard either in a court of law or equity, should he seek to reinvest himself with the title, for the reason that he had parted with it, for either of these purposes. The plaintiff acquired her title, in the language of the

statute, from a person other than her husband, and that she did so in good faith can be questioned alone by those who have a right to object to her holding the title. These, it is believed, are limited to her husband's creditors. Certainly, he has no right to object, and those who have injured the property cannot, therefore, be held responsible to him as for an injury done to his property, and we can conceive of no other grounds upon which they can question the plaintiff's right.

The evidence is full to the point that the plaintiff has controlled and managed the property, as her sole and separate property, free from the control of her husband. The evidence does not show a joint use or possession by the plaintiff and her husband; but it is clearly shown that the business connected with the use of the property was exclusively managed by her, in her own name, and that her husband did nothing whatever, but simply lived with her as a mere pensioner on her bounty. The property being, then, as against wrong-doers, the sole and separate property of the plaintiff, acquired from a person other than her husband, in good faith, and being under her sole and separate control, the suit was well brought in her name alone. *Beach* v. *Miller*, 56 Ill. 206.

The next inquiry is, does the evidence sufficiently show that the alleged trespasses were committed under the direction, or by the authority of the city.

Fox, Howard & Walker were sued jointly with the city, but after hearing evidence, and before the case was finally given to the jury, on motion of appellee's counsel, the case was dismissed as to them. Before this was done, Howard was sworn and examined as a witness in his own behalf, and testified that the work on the canal, resulting in the injuries complained of, was done by his firm under a contract with the city, and pursuant to the terms of that contract. The contract itself, however, was not offered in evidence, and what its terms were, we cannot know. No ordinance of the city relating to the work was given in evidence; on the contrary, when it was offered to read such

ordinance, as evidence on behalf of the city, they were, on motion of appellee's counsel, excluded by the court.   There seems to have been a zealous effort, indeed, on behalf of appellee, to exclude all evidence showing the connection of the city with the improvement of the canal.

That an action of trespass lies, in a proper case, against a municipal corporation, is not an open question in this court. *Allen* v. *The City of Decatur,* 23 Ill. 334; *Wolf et al.* v. *Boettcher,* 64 ib. 316.  But to render it liable, in any case, for torts committed by persons claiming to act for it, or by its authority, it must appear that they were expressly authorized to do the acts by the municipal government, or that they were done *bona fide* in pursuance of a general authority to act for the municipality on the subject to which they relate; or that, in either case, the act was adopted and ratified by the corporation. *Thayer* v. *Boston,* 19 Metc. 571.  See, also, Dillon on Municipal Corporations, § 772, and note.

Assuming, as we shall, that appellant was authorized by the legislature to "widen and deepen" the Illinois & Michigan canal, for its own benefit, we cannot judicially know that it determined to do so, however well known the fact may have been to its citizens; nor can we take cognizance, without proof, of what ordinances and contracts it may have adopted and made on that subject; nor can we, in the absence of proof, know that its agents or employees acted within the scope of their duties.   Counsel for appellee refer to and quote from what they claim to be an ordinance of appellant, approving certain acts relative to this work, but no such ordinance is in evidence.

We are, therefore, of opinion that the evidence fails to sufficiently connect appellant with the acts complained of.

The objection, that under the act of February 16, 1865, the work of "widening and deepening the canal," was not within the corporate duties of appellant, we should not regard as tenable, if the evidence had sufficiently shown that the work was, in fact,

done by appellant pursuant to the provisions of that act. The question was before the court, and decided in *The City of Chicago* v. *Joney*, 60 Ill. 384, where the evidence was complete, and clearly showed the connection of the city with the injuries complained of. It was there said: "The facts stated in the preamble to the act of 1865 show conclusively that this enlargement of the canal was a suggestion of the city of Chicago, and recommended for the only purpose of cleansing the river, which had become, by reason of having no current, a nuisance. The act of 1865 bears on its face the impress of benefit to Chicago, and nothing more. That was the moving cause, as we infer, for the passage of the act. The city was, in no sense, the agent of the State."

It is further insisted that the court erred in admitting in evidence certain deeds, among others those of John McGraw and the plaintiff to Peter J. McGraw, and Peter J. McGraw to the plaintiff, because a complete chain of title from the government was not first shown. These deeds were competent evidence as tending to prove title in the plaintiff, and to show what right she claimed by her possession. The rule is, that the person who has the actual possession of real estate will be deemed and held to be the true owner, until the contrary is made to appear. *McLean* v. *Forden et al.* 61 Ill. 109. No effort was made to show title to the property conveyed by these deeds, in any one else, and they were sufficient *prima facie* evidence of title in the plaintiff.

Appellant offered to prove, by parol, that no sales were made by the government of the United States, within a reservation claimed to have been made for the benefit of the canal. This evidence was properly excluded. The government records furnish the proper evidence of what lands were sold, and what reservations were made for canal or other purposes. If a reservation by the government had been proved, embracing the plaintiff's property, the burden would then have been on her to have shown that the government had subsequently, and before

572        THE CITY OF CHICAGO *v.* McGRAW.        [Sept. T.

Opinion of the Court.

its control over the reservation had ceased, changed its policy, and disposed of the property reserved, by sale.

Objection is urged to the ruling of the court in refusing to give certain instructions asked by the defendant. Four of these relate to the question discussed in the first part of this opinion, with reference to the plaintiff's rights under the act of 1861 respecting the separate property of married women, and were properly refused, in the view of her rights there expressed. The remaining one was objectionable, in view of the law as held by this court in *The City of Chicago* v. *Joney, supra.*

It is finally insisted that a strip of land 90 feet wide, on each side of the line of the canal, was dedicated by the United States, before any of the lands were put in market for sale, to the use of the State for transacting the canal business; that this dedication was accepted by the State, and that the proof shows that it was taken possession of by the State, and that the plaintiff's property is within this strip of 90 feet. To support this, the counsel for the defendant refer to the act of congress of March 30, 1822. So much of that act as is supposed to bear upon the question is as follows: " That the State of Illinois be and is hereby authorized to survey and work through the public lands of the United States, the route of the canal connecting the Illinois river with the southern bend of Lake Michigan; and 90 feet of land on each side of said canal shall be forever reserved from any sale to be made by the United States, except in cases hereinafter provided for, and the use thereof forever shall be and the same is hereby vested in said State for a canal, and for no other purpose whatever; on condition, however, that if said State does not survey and direct, by law, said canal to be opened, and return a complete map thereof to the treasury department, within three years from and after the passing of this act; or, if the said canal be not completed, suitably for navigation, within twelve years thereafter; or, if said ground shall ever cease to be occupied by and used for a canal

suitable for navigation, the reservation and grant hereby made shall be void and of none effect," etc.

There is no evidence whatever, in the record before us, that these conditions were complied with by the State, and it is incumbent on the defendant, in order to avail of the reservation and grant, as against the possession of the plaintiff, to show that the conditions were complied with, because this is made indispensable by the act of congress to the vesting of the rights conferred in the State. On the contrary, the general assembly, at its session in 1826, memorialized congress for a grant of lands to aid in the construction of a canal, not, however, connecting the Illinois river with the *southern bend of Lake Michigan*, as required by this act of congress, but uniting the waters of Lake Michigan with the Illinois river. And congress, by another act, approved March 2, 1827, granted to the State, for the purpose of aiding it in opening a canal, "to unite the waters of the Illinois river with those of Lake Michigan, a quantity of land equal to one-half of five sections in width, on each side of said canal, and reserving each alternate section to the United States, to be selected by the commissioner of the land office," etc.

Subsequently, the general assembly, by an act approved January 22, 1829, created "the board of commissioners of the Illinois & Michigan canal," and invested it with power to consider, devise and adopt such measures as might be required to facilitate and effect the communication, by means of a canal and locks, between the navigable waters of Illinois river and Lake Michigan. And among other duties enjoined on it was that of selecting, or causing to be selected, as soon as practicable, in conjunction with such commissioner as should be appointed by the commissioner of the general land office, under the direction of the president of the United States, the alternate sections of land granted to the State, by the act of congress last referred to; and it is not claimed, or pretended, that the Illinois & Michigan canal, as located and constructed by this

board, and its successor, has, for one of its termini, the southern bend of Lake Michigan.

The act of congress of March 2, 1827, does not purport to be an amendment of the act of March 30, 1822, nor does it, even by inference, refer to it. In our opinion, these acts constitute distinct and independent offers, by the government of the United States, of aid to the State in the construction of canals, and the latter one having been accepted, without reference to the terms and conditions of the former, the State is only entitled to the grant which it conveys.

For the error indicated, however, the judgment must be reversed and the cause remanded.

*Judgment reversed.*