THE CITY OF CHICAGO

*v.*

JAMES TURNER.

| 80 | 419 |
|---|---|
| 33a | 272 |
| 33a | 622 |
| 80 | 419 |
| 49a | 553 |
| 80 | 419 |
| 78a | 314 |
| 80 | 419 |
| 180 | 156 |
| 80 | 419 |
| 91a | [1]478 |
| 80 | 419 |
| 190 | [1]355 |

1. MUNICIPAL CORPORATIONS—*liability for illegal acts of its officers and servants.* Where the act done is within the corporate power, and might have been lawfully accomplished, had the municipal authorities proceeded according to law, the corporation will be liable for the acts of its officers and servants, proceeding contrary to law, or in an irregular manner.

2. But where the act complained of lies wholly outside of the general or special powers of the corporation, it can, in no event, be liable, whether it directly commanded the performance of the act, or whether it be done by its officers without its express command.

3. Where a declaration shows an injury resulting from the acts of city officers in attempting to enforce an ordinance which was *ultra vires* and void, it will fail to show any right of action against the city.

APPEAL from the Circuit Court of Cook county; the Hon. LAMBERT TREE, Judge, presiding.

Mr. EGBERT JAMIESON, for the appellant.

Mr. T. A. MORAN, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The declaration alleges that the plaintiff was possessed of a slaughter house, and was engaged in the business of slaughtering, and was making therein great gains; that the defendant made, with John Reid & Co., a contract, in form an ordinance, which passed the common council, in which the defendant undertook, in consideration of acts to be done and performed on the part of John Reid & Co., to grant to Reid & Co. the exclusive right to do all the slaughtering that was to be done in the city of Chicago; that no other slaughtering, except that done by Reid & Co., should be done within the city of Chicago; that the defendant undertook to use diligence in preventing slaughtering from being done at any other house; that in pursuance of such contract, the defendant, by its servants, entered upon the premises of the plaintiff, threatened and drove away his customers and broke up his business, and caused him great damage.

The questions discussed in the briefs before us may all be resolved into the single question: Do these allegations, in substance, show a cause of action ?

We held, in *Rumpff* v. *Turner*, 45 Ill. 90, that this ordinance was *ultra vires* and void; but the plaintiff contends that the subject of the ordinance was within the general powers conferred upon the city; and, therefore, notwithstanding the ordinance was void, the city is liable for the acts of its servants done pursuant to it, and *Allen* v. *The City of Decatur*, 23 Ill. 332, *The City of Pekin* v. *Newell*, 26 Ill. 320, and *Howell* v. *The City of Buffalo*, 15 N. Y. 512, are cited to sustain the position. An examination of these cases will show that they relate to acts clearly within municipal power, but unauthorized because of some irregularity or unlawfulness in the mode of executing the power.

In *Allen* v. *The City of Decatur*, an order was made, directing the opening of a street over property which had not been condemned, nor the right of way granted to the city, and the acts of trespass were in executing this order. The

city was liable, not because it had no power to open streets, but because it had not taken the proper steps essential to its doing so in this instance.

In *The City of Pekin* v. *Newell*, the *gist* of the decision is correctly given in the syllabus thus: " If a city is authorized to construct a highway in a particular manner, but does it in a different one, it will be answerable in damages to a party sustaining injury upon it, as much as though it had not exceeded or deviated from its authority." So, there, also, there was no question of power, but only as to the lawfulness of its execution.

*Howell* v. *The City of Buffalo* was of precisely the same character. At the conclusion of the opinion of the majority of the court, delivered by BROWN, J., it is said: " It is hardly necessary to say that the acts out of which the plaintiff's cause of action arose were matters within the scope of the corporate powers of the city of Buffalo. The common council had power to grade and pave the street; to cause the damages done to the owners of lands to be assessed upon other lands benefited; to issue warrants to collect the money assessed. What was done was an irregular or illegal exercise of a power which the common council, doubtless, possessed. For such acts of its authorized agents, the corporation is liable in an action of tort."

Of like tenor is, also, the case of *Chicago* v. *McGraw*, 75 Ill. 566.

The language of the city charter, which, it is claimed, conferred power over the subject, confers authority upon the city to " direct the location, management and construction of, and regulate, license, restrain, and abate and prohibit, within the city and the distance of four miles therefrom, slaughtering establishments." Gary's Laws and Ordinances, p. 25.

The ordinance whereby the contract was made giving Reid & Co. the exclusive privilege to do all the slaughtering within the city, is, in no proper sense, the exercise of any power here conferred. It has no reference to the location of slaughtering establishments—the mode of their construction or manage-

ment — nor is it the exercise of a power of regulation or license, or restraint, or a prohibition of the business within the prescribed limits; it is simply an unlawful discrimination in favor of one to the exclusion of all others, where all are entitled to equal rights—the creation of a monopoly in slaughtering.

The ordinance does not regulate or restrain the business of slaughtering, as to the place, time or manner in which it shall be carried on, to which alone the charter has reference; but assumes to discriminate as to the person, for which there was no authority, either under the charter or the constitution.    It was no more an attempted exercise of the powers actually conferred by the charter, than would an ordinance have been prohibiting the eating of flesh within the city limits, which had not been slaughtered and dressed by. Reid & Co.    The power was simply to prevent the business becoming injurious or offensive to others, and had no reference whatever to individual favoritism in carrying it on.

In the cases to which reference has been made, the end in view could have been accomplished, had the municipal authority proceeded in a different and regular way.    But there is no way by which the city could have proceeded to have made a valid ordinance and contract, giving to one firm a monopoly of all the slaughtering; and this marks the distinction between the total absence of a power, and its irregular or unlawful execution.

The counsel concedes that if the ordinance be of the character we have indicated that in our opinion it is, the defendant is not liable for the acts of its servants in attempting to execute it.    The rule is thus stated in Dillon on Municipal Corporations, sec. 766 (1st Ed. p. 724): "If the act complained of lies *wholly outside* of the general or special powers of the corporation, as conferred in its charter or by statute, the corporation can in no event be liable, whether it directly commanded the performance of the act, or whether it be done by its officers without its express command; for a corporation can not, of course, be impliedly liable to a greater extent than it

could make itself by express corporate vote or action." *President and Board of Trustees* v. *Shroeder et ux.* 58 Ill. 353, *Horn* v. *Mayor, etc., of Baltimore*, 30 Md. 218, *Eastman* v. *Meredith*, 36 N. H. 248, *Mayor, etc.*, v. *Cunliffe*, 2 Comst. 165, will be found in harmony with the views we have expressed.

We are, therefore, of opinion that the plaintiff's declaration discloses no cause of action, and that the court erred in the giving and refusing of instructions, and in rendering judgment upon the verdict of the jury.

*Judgment reversed.*