THE CONSOLIDATED HOME SUPPLY DITCH AND RESERVOIR COMPANY v. HAMLIN.

1. NUISANCE.
The continuing of a trespass or nuisance from day to day is considered in law a several trespass on each day.

2. SAME—LIMITATION.
The statute of limitations does not bar an action for damages done within six years by a nuisance erected before that time, but the recovery will be limited to the damages sustained within the six years preceding the bringing of the action.

3. RES JUDICATA.
The award of arbitrators upon a submission of differences between the ditch company and the landowner concerning damages for the right

of way for an irrigating ditch and a reservoir is not res judicata
as to a claim for damages occasioned by the seepage or percolation
of water from the ditch, resulting from the negligent construction
thereof and its subsequent operation.

4. DAMAGES—NUISANCE.
Wherever a nuisance is of such a character that its continuance is neces-
sarily an injury, and where it is of a permanent character that will
continue without change from any cause but human labor, the dam-
age is the original damage, and may be at once fully compensated
and the injured party will have no right to a second action for dam-
ages resulting from a continuance of the nuisance.

*Appeal from the District Court of Larimer County.*

In 1882 appellant excavated a ditch, known as the Home
Supply Ditch, over the land of appellee.   In 1883 and 1884
it excavated the Lake ditch below and nearly parallel to the
former across the same land ; both ditches were on the sidehill
and in both at certain points the material through which the
ditches were excavated was shale or loose porous rock, at
which points the ditches were carried around " draws," or
natural drainage depressions that led down upon, and over
the lower and better portion of appellee's farm.

Of percolation and damage from the upper ditch it is un-
necessary to speak, as it was comparatively slight previous
to the construction of the second ditch, and after that, it must
of necessity have come through and from the lower ditch.
In neither ditch were any artificial means used to prevent
percolation and wasting of water at points where the loose
material and character of the rock required that it should be
protected.

The evidence establishes the fact that from and after the
construction of the Lake ditch the percolation at first limited,
increased in quantity, or the effect became such by the con-
tinual discharge as to submerge, or at least destroy for agri-
cultural purposes, a fraction over fifty-three acres of the
lower and most valuable portion of plaintiff's farm.

The evidence shows that although the seepage commenced
in 1885 there was but a comparatively small amount of land

injured or destroyed until 1889; that after that date his crops were destroyed. That three or four years previous to bringing suit officers were informed of the damage being done and at several times afterwards, and that in the fall of 1891 the attention of the officers was called to the matter and they agreed to look it over and see what could be done, but no further action was taken, and this suit was brought. Appellant answered, setting up as special defenses that when the Lake ditch was built the value of the right of way across the land of appellee and the damage to the balance of the estate was submitted to arbitration, and a finding and award in favor of appellee, that the amount was paid and that the damage by seepage was covered by the award, consequently that the action could not be maintained; also pleaded the statute of limitations.

The case was tried to a jury resulting in a verdict and judgment for appellee of $1,200.

Mr. B. L. CARR and Mr. F. P. SECOR, for appellant.

Mr. JEFFERSON McANELLY, for appellee.

Reed, J., delivered the opinion of the court.

A large number of errors are assigned, many going to the admission and refusal of evidence in establishing the extent of the damage sustained, others going to the instructions of the court. The case has been ably and exhaustively argued by counsel. The court limited the evidence to the period of six years before action brought. The plaintiff testified that in 1884 seepage destroyed about one acre, in 1885 about three or four acres.

The first contention of counsel for appellant is, the fact having been established of the injuries having commenced seven or eight years before bringing the action, no action could be maintained, and that the court erred in holding that the action was based upon a continuing nuisance, and that

damages were recoverable for six years preceding the bringing of the action. Many authorities are cited in favor of the contention,—most of them from the state of Iowa, two from the state of Illinois. In *Van Pelt v. City of Davenport*, 42 Iowa, 308, cited by counsel, the question was in no way involved nor adjudicated.

In *Stodghill v. Railroad Co.*, 53 Iowa, 341, plaintiff was the owner of land crossed by a natural stream; the railroad company built an embankment, dug a new channel and permanently diverted the stream from the land of plaintiff. The court very properly held that the damage was entire and susceptible of recovery immediately upon the permanent diversion of the stream, and that the plaintiff could not divide his claim, and maintain successive actions.

In *Simpson v. Keokuk*, 34 Iowa, 568, cited by counsel, no such question was raised.

The case of *Powers v. Council Bluffs*, 45 Iowa, 652, comes nearer than any other from that state in sustaining the contention, if only the syllabus is looked to. Indian creek, a crooked living stream of water, meandered the street of the city. The city changed its course by cutting a ditch on the side of the street and diverting across the front of lots owned by the plaintiff. The court held that when the ditch was dug and water diverted all the damage had been sustained and an action would then lie, that there was no subsequent and continuing damage, and the statute commenced to run at the date of the diversion and the action barred in five years. In principle this case is not distinguishable from *Stodghill v. Railroad*, (*supra*). The case is carefully considered and the distinction drawn which takes the case at bar out of the decision in that.

The court says, " The only question in this case *is as to the character of the damage*. Was it as it accrued from day to day new damage? If so, the plaintiff was entitled under the evidence to recover some damages, although his right of action as to a part of the damages sustained might be barred. We have to distinguish then between what must be regarded

as original damages and what may be regarded as new damages."

*Van Orsdol v. Railroad*, 56 Iowa, 470, was suit brought for the diversion of a stream in the construction of the railroad, whereby sand and earth were washed upon and deposited on plaintiff's land. The defendant, as in this case, contended that the injury complained of occurred in 1873 when the railroad was built, and that the action was barred by the statute of limitations. The evidence showed that no damage occurred until 1876, and the court held that the statute did not run until the damage was done.

In *Railroad Co. v. McAuley*, 121 Ill. 160, counsel seem to have overlooked one important part of the decision; the court in discriminating between a permanent injury where the whole damage occurred at the date of the act and a continuous injury or nuisance says, "The continuance of the injurious acts is considered a new nuisance for which a fresh action will lie; and although the original cause of action is barred, damages may be recovered for the continuance of the nuisance," citing with approval Wood on Limitations, 371; *Thompson v. Reed*, 48 Ill. 118; though discussing the statute of limitations was in regard to bill for board and has no bearing upon the question under discussion.

Counsel cite Gould on Waters, sec. 416; but an examination shows it only relates to permanent injury complete when the act is done, not to a continuing trespass or nuisance.

If the contention of counsel is adopted there can be no recovery in cases of this character; taking the line of authorities relied upon we would find that the cause of action accrued at the time the ditch was excavated; at that time there was no damage to compensate, nor could it have been foreseen that in the future, water percolating from the ditch and by subterranean channels or courses, upon the surface of the underlying rock, seeking a lower level, would find a basin where the further drainage would be stopped and a large body of subterranean water accumulating from year to year would ultimately extend to the surface and destroy a large

portion of the farm. The damages being long subsequent to the building of a ditch, and the injury arising from causes impossible to have been foreseen, the extent of the injury impossible to determine, it follows that at the time of the construction there was no cause of action, and no recovery could have been had, nor after two or three years when the injury became apparent and three or four acres of land had been destroyed could the damage sustained and prospective damage, have been recovered, as contended, in a single action, from the impossibility of knowing the extent of subsequent injury. It will be apparent, that the damage arose from the other class of injuries.

No suit could have been maintained until some actual injury was caused to the plaintiff by the water, resulting from the improper construction of the ditch. The right to construct and operate the ditch had been granted. No damage could have been recovered for the construction, but all unforeseen and resulting damage from its operation and improper construction and continuance could be recovered. Wash. on Eas. & Serv. 591.

In 3 Black. Com. 220, it is said, that every continuance of a nuisance is a new one for which a fresh action will lie. The leading English cases sustaining this doctrine are *Holmes v. Wilson*, 10 Adolph. & El. 503 ; and *Bowyer v. Cook*, 4 Man. G. & S. 236.

In 1 Wms. Saund. 20, note 1, it is said " The continuing of a trespass from day to day is considered in law a several trespass on each day." See *Battishill v. Reed*, 18 Com. B. 696 ; and *Stroyan v. Knowles*, 6 Hurl. and Nor. 454.

In *Whitehouse v. Fellows*, 10 Com. B. 765, it was said : " If the cause of action be, not the doing of the thing, but the resulting of damage only, the period of limitation is to be computed from the time when the plaintiff sustained the injury."

But few of the leading American authorities out of the great mass need be cited.

The distinction between the two classes of injuries are fully

discussed, in Gould on Water Rights, sec. 428; Wood on
Nuisance, secs. 853 to 856, and Wood on Limitations of
Actions, sec. 180.

Of state decisions, see *Delaware & R. Canal Co. v. Lee*, 2
Zab. (N. J.) 243, where that court held " An actionable nui-
sance may be caused by an act perfectly lawful in itself when
the nuisance complained of is only a consequence of that act."
It was also held " The statute of limitations is no bar to allow-
ing damages done within six years, by a nuisance erected
before the six years, in case where the nuisance has not been
so long continued as to raise presumption of a grant." See
also *Butler v. Peck*, 16 Ohio St. 334; *Valley Railroad Co. v.
Franz*, 43 Ohio St. 623; *Troy v. Cheshire R. Co.*, 23 N. H. 83;
*Cumberland Canal Co. v. Hitchings*, 65 Me. 140.

The conclusions reached are: 1st. That the court did not
err in its application of the statute of limitations in restrict-
ing it to the six years preceding the bringing of the action.

2d. That the injury being one that could not be foreseen
nor the damage estimated, no cause of action arose from the
construction of the ditch, such act being lawful, and a cause
or causes of action only arose subsequently, in which damage
to the time of the bringing of suit, only, could be recovered.

3d. That the nuisance or trespass was continuous, and
the subsequent damage continually being incurred, that the
ditch company were liable until the nuisance was abated and
the cause of damage removed.

4th. That successive suits might be brought and maintained
for the damages sustained subsequent to the former recovery.

In Sedg. on Dam. 2d ed. 241, it is said, " Every contin-
uance of a nuisance is held to be a fresh one, and therefore a
fresh action will lie." Cited with approval in *Whitehouse v.
Fellows*, 10 Com. B. (N. S.) 765; see also 3 Black. Com. 220;
*Delaware & R. Canal Co. v. Wright*, 1 Zab. (N. J.) 469; *Ved-
der v. Vedder*, 3 Denio (N. Y.), 257.

The law of continuing nuisances and continuing trespasses
is, admittedly, the same.

The case of *D. C. I. & W. Co. v. Middaugh*, 12 Colo. 434,

cannot, as supposed by counsel, be considered as conclusive of this case. There is enough in that opinion to take this case out of its operation; it is said, " It follows that appellee should have been limited in his recovery to such injuries as resulted from negligence or want of care in the construction of appellant's ditch and reservoir or in the subsequent use of the same, and it was error to permit the jury to consider and allow damages for seepage and leakage not resulting from such negligence or want of care." This puts the decision in harmony with the great number of American decisions, and also the English cases. In *Whitehouse v. Fellows*, 10 C. B. (N. S.) 765, it was said by the learned court " But if * * * the damage which accrued to the plaintiff was caused by the negligence of the defendants, they would be responsible."

This case was put fairly upon negligence in constructing the ditch and its subsequent operation. Undoubtedly in the *Middaugh Case* the law was properly applied to the facts proved, but in all of this class of cases each case must depend upon its own facts as established.

In nearly all of this class of cases the condemnation proceedings and award of damages precede the construction,— presume the work will be properly constructed and operated. The doctrine contended for would be monstrous. To hold that by reason of damages allowed for right of way and what inconvenience and detriment could be foreseen, a party was concluded and barred from the recovery of damages unforeseen, and arising from faulty construction and want of proper protection, would be to hold, in effect, that by the purchase of a right of way, the purchaser became the owner of the entire estate and that if the line of the canal was upon the line of the higher part of the farm, the entire farm could be made subservient and be destroyed with impunity, because, if it could be held to cover one or five acres destroyed, there would be no limit except the extent of the tract.

, In England the rule is well and concisely stated in *Lancashire R. Co. v. Evans*, 15 Beav. 322, to be that the *ordinary* damage is included in the assessment but that " any *future*

*extraordinary damage* is not intended to be included in it."
See also *Lawrence v. Great North R. Co.*, 16 Q. B. 643 ; and
the *Rex v. Subs. R.*, 3 Ad. & E. 683.   American authorities
are in harmony with it.

Counsel cite and rely upon Mills on Em. Dom. sec. 116, " All
damages are presumed to have been considered in the assess-
ment," but failed to turn to sec. 117, " Damages arising after-
wards, unforeseen damage," where the text and numerous
authorities fully sustain the conclusion we reach.   See *Eaton
v. Boston & M. R.*, 51 N. H. 504, where it is said : " The fact
that the parties making the assessment, did not, or could
not anticipate the damage, does not include the right to dam-.
ages."

" Such damages may be recovered by common law action,
if not within the purview of the parties making the assess-
ment."    *Eaton v. Boston & M. R., (supra)* ;   *Calhoun v. Pal-
mer*, 8 Gratt. (Va.) 88 ;   *Whitworth v. Packett*, 2 Gratt. (Va.)
528.

" The fact that the loss was not suffered within a short
time after the construction of the road, does not make it any
the less a taking.   The testimony must depend upon the in-
jurious effect and not on the length of time necessary to pro-
duce the effect."    *Eaton v. Boston & M. R. Co., (supra)* ;
*Wabash Canal Co. v. Spears*, 16 Ind. 441.

The amount of compensation for land taken, and damage
to balance of the estate, was submitted to arbitration, an award
made and the amount accepted.

It is urged that this is conclusive and that such award antic-
ipated and covered all future damage.   It would be suffi-
cient to say that the subsequent damages arising from the
contingency of the peculiar character could not have been
foreseen, anticipated or considered.   That it was not consid-
ered or anticipated was shown by the evidence of one of the
arbitrators.   A further sufficient answer would be that no
such element of damage was embraced in the submission of
award.

It is contended at great length in argument, that the plain-

tiff could not maintain his action because the property injured had been conveyed by deed of trust to secure borrowed money. No proof was made nor was there any plea or issue. So far as the record is concerned it seems to have rested entirely upon a statement of the fact to the court by counsel for appellant during the trial. The evidence showed appellee to have been in possession, previous to and during the time the injuries occurred, and still in the possession at the bringing of suit and trial, which was sufficient in an action of trespass against a party not asserting title. This principle is so well settled that authorities in its support are hardly necessary, but see: *Carney v. Reed*, 11 Ind. 417; *Look v. Norton*, 55 Me. 103; *Chicago v. McGraw*, 75 Ill. 566; *Darling v. Kelly*, 113 Mass. 29; Bac. Abrid. Title, Trespass; Waterman on Tres. sec. 772.

It is also urged that the court erred in regard to the proper measure of damages, and improperly admitted evidence of the value of the land destroyed and the subsequent depreciation of the entire estate by reason of the injury. In cases of this kind several different methods may be adopted to furnish the jury data upon which to base a verdict; 1st. The depreciated value of the estate by reason of the trespass.

2d. The rental value of the land.

3d. The destruction of crops and value of the use of the land to the proprietor.

Neither is held proper to the exclusion of others. The true rule seems to have been stated in *Seely v. Alden*, 61 Pa. St. 302.

" In general the rule for the measure of damages in cases of tort, may be said to be that which aims at actual compensation for the injury, and whatever ascertains this, is proper evidence to be submitted to the jury." See: *The Colo. Con. L. & W. Co. v. Hartman*, recently decided in this court, 5 Colo. App. 150, and authorities cited.

In this case evidence of crops lost, the value of the use of the land to the owner during the time, or the rental value, was sufficient to warrant the verdict. We cannot know whether

the destruction of the land and diminished value of the estate was considered by the jury at all in estimating the damages

We do not think there was any serious error in the court's instructions given, or in its refusal to give those asked, or that any serious error occurred upon the trial to warrant a reversal of the judgment.

*Affirmed.*

ON REHEARING.

THOMSON, J., delivered the opinion of the court.

It is contended in support of this petition for rehearing, that our decision is in conflict with the decision of the Supreme Court, in the case of *D. C. I. & W. Co. v. Middaugh*, 12 Colo. 434. I do not think that decision has any application whatever to this case. That was an action for damages occasioned by water percolating through the banks and bottom of the defendant's canal, under, through and upon the lands of the plaintiff. It appeared from the pleadings that at the time the canal was constructed, a proceeding was instituted by the defendant in the county court of Arapahoe county, to condemn a right of way for its canal over the plaintiff's lands, in which there was judgment of condemnation, and an award to the plaintiff of $2,163.75 for the land taken, and $1,500 as damages to the land not taken. These sums were accepted by the plaintiff. The amount of the award was in excess of the jurisdiction of the county court; but the supreme court held that the plaintiff, by accepting and retaining the money, estopped himself from questioning the validity of the judgment; and treated the proceeding as if it had been conducted in a court of competent jurisdiction. The law governing condemnation proceedings is exhaustively discussed by Mr. Justice Hayt who delivered the opinion, and the conclusion reached that all damages consequential upon seepage from the canal, and not resulting from its negligent, or unskillful, construction or use, were or should have been included in the award; and were therefore by the judgment in

condemnation *res adjudicata.* This conclusion is expressly based upon the provision of the statute, that in condemnation proceedings, the owner, or those interested in the real estate taken, shall be awarded damages, not only for the land or property taken, but also the damages, if any, to the residue of the land or property. The utmost extent to which the decision goes is that by virtue of the language of the statute, all the damages, present and prospective, that are the natural, necessary or reasonable incident of the improvement, will be conclusively presumed to have been assessed in the condemnation proceeding, and cannot be re-litigated.

The feature of condemnation does not exist in the case at bar; and the presumption by which a judgment in a condemnation proceeding concludes the parties and the court, is not present. When the Home Supply Ditch was constructed, a contract was entered into between the Home Supply Ditch Company and the plaintiff, in reference to his compensation and damages, for the construction of that ditch across his land. The contract does not appear to have been in writing. Of course, what its terms were, whether these damages were included in it, and whether it was carried out, were questions of fact to be determined upon the evidence. It could not bind the parties except as to the matters embraced in it, and what those were could be ascertained only by an investigation of the facts.

The differences between the parties on account of the construction of the Lake ditch, were submitted to arbitrators. The agreement of arbitration, and the award, are as follows:

### "AGREEMENT TO ARBITRATE.

" Whereas, a controversy exists between the above named, The Consolidated Home Supply Ditch and Reservoir Company, a corporation duly organized and existing under and by virtue of the laws of the state of Colorado, and Oliver T. Hamlin, which controversy may properly be the subject of a civil action between said parties, and

" Whereas, the said controversy relates to the amount of

damages resulting to the said Oliver T. Hamlin by the reason of the construction of a certain irrigating ditch called the "Lake Ditch" on and through the following described premises of the said Hamlin by the said The Consolidated Home Supply Ditch and Reservoir Company, that is to say : The right of way for the said ditch through the east half, of the south-west quarter of section thirty-four, township five north, of range sixty-nine west; the south-east quarter of the same section, the south half of the north-east quarter of same section, and the south-east quarter of the north-west quarter same section, all in Larimer county, Colorado.

"Also damages for the condemnation of a basin or lake called the Godwin lake, and the land upon which said lake is located, owned by the said Hamlin.    Said lake located upon the following described lands ; part of the south half of the south-west quarter, section number thirty-four, township five north of range sixty-nine west, the north-east quarter of the north-east quarter of section number four, and the north-west quarter of the north-west quarter of section number three, township four north of range sixty-nine west, in Larimer county, Colorado.  Said basin more fully shown by plat thereof attached and made a part of this contract, marked exhibit 'A' as well as plat of line ditch.

"It is therefore fully agreed by the said The Consolidated Home Supply Ditch and Reservoir Company, and Oliver T. Hamlin that they hereby submit all matters and all matters of difference above mentioned in relation to the said right of way and said reservoir, to the following named arbitrators, that is to say : James Sullivan, John Hahn and Warren Blinn, who are to meet for said purpose at the office of James M. Aldrich, in the town of Loveland, Larimer county, Colorado, at 10 o'clock, A. M., on the 9th day of November, A. D. 1883, and they agree to abide the award of said arbitrators, and that the award of the said arbitrators, when made, may be filed by the successful party, with the clerk of the district court of Larimer county, Colorado, in the second judicial

VOL. VI—23

district of said state, as a basis of a judgment, and that an execution may be issued for its collection.

"In testimony whereof, the said The Consolidated Home Supply Ditch and Reservoir Company has caused its corporate name to be hereto signed by its president, and its corporate seal to be hereto affixed by its secretary, and the said Oliver T. Hamlin has hereunto subscribed his name, this 7th day of November, A. D. 1883.

"THE CONSOLIDATED HOME SUPPLY DITCH AND RESER-
    VOIR COMPANY.
                    "By C. J. CHAPMAN, as President. [SEAL]
                    "OLIVER T. HAMLIN.
"Attest: E. S. ALLEN.


                            "AWARD.

" We, the undersigned, arbitrators appointed by the submission hereto annexed, having met at the office of James M. Aldrich in the town of Loveland, at 10 o'clock A. M., Friday, November 9, 1883, and after having been duly sworn, we proceeded to hear the allegations, evidence and arguments of the parties, and after hearing the same, and being fully advised in the premises, to make the following award:

" 1. We award to Oliver T. Hamlin as damages for the right of way for the ditch described in the contract hereto attached, fifty-two feet wide along the line thereof, as now surveyed and marked by furrows, five hundred and sixty dollars.

" 2. We award to the said Hamlin as damages for the said lake taken, described in the contract hereto attached, two hundred dollars.

" 3. We make a total award to the said Hamlin for all damages, and pay of arbitrators, seven hundred and sixty-nine dollars, this November 9, 1883.

" The said award shall be binding upon the said company when the said Hamlin shall cause to be deeded to said company the title to said right of way, and a deed to the right of way through the land known as the Godwin lake, together

with a release and conveyance to said company by the God-
win Reservoir Company, of all its rights and franchises.

> " JAMES SULLIVAN,
> " JOHN HAHN,
> " WARREN BLINN."

From the statement of the controversy in the agreement,
it seems reasonably clear that the difference between the par-
ties was concerning the right of way through the plaintiff's
land and the Godwin lake or reservoir, which it appears had
already been appropriated by the defendant. But the sub-
mission itself is explicit upon the subject. It submits to the
arbitrators the matters of difference in relation to the right
of way and the reservoir, and no other matters. The dam-
ages awarded are for the right of way and the lake, and noth-
ing else. The question of damages to the residue of the
land, was not submitted or passed upon. It probably did not
occur to the parties that the remainder of the land would
ever sustain any injury in consequence of the ditches, be-
cause, as yet, there was nothing to indicate it. The seepage
which occasioned it did not commence until 1885. The
arbitration proceedings therefore present no obstacle to a
recovery by the plaintiff in this action.

As far as the ditches are concerned, it is clear from the
plaintiff's testimony that there was no negligence in their con-
struction; and there is no evidence of their subsequent neg-
ligent management; but the question of negligence is not
in this case, and all allegations concerning it in the complaint
may be rejected as surplusage.

I think the evidence of the diminished value of the land,
in consequence of the seepage, was properly received. Dam-
ages occasioned by a nuisance which is not of a permanent
character, are measured by the loss suffered before the com-
mencement of the suit; but where it is permanent, all dam-
ages resulting from it are recoverable in one action; and the
diminished value of the property affected by it is their proper
measure. It is perhaps not always easy to make the distinc-

tion; but the court, in *Town of Troy v. Cheshire R. R. Co.*, 3 Fost. (N. H.) 83, lays down the following rule, which seems to me to be founded in reason, and which can be readily applied to this case. It is as follows:

"Wherever the nuisance is of such a character, that its continuance is necessarily an injury, and where it is of a permanent character, that will continue without change from any cause but human labor, there, the damage is an original damage, and may be at once fully compensated, since the injured person has no means to compel the individual doing the wrong, to apply the labor necessary to remove the cause of injury, and can only cause it to be done, if at all, by the expenditure of his own means."

See also *Powers v. City of Council Bluffs*, 45 Iowa, 652.

The ditches in question are necessary to render the land through which they pass productive. The country requires them, and it is presumed that they will be maintained for an indefinite period of time. The evidence is that they were constructed in the ordinary and usual manner, and that the seepage is a necessary result of the character of the land. The seepage will therefore continue, and the same injury result from it, as long as the ditches are used. The cause of the injury is permanent, and therefore the injury itself is permanent. The evidence of the diminution in the value of the land was properly received; the instructions submitted the question involved fairly to the jury; and the verdict must be assumed to include the entire damage sustained, so that the plaintiff will be entitled to no further action by reason of a continuance of the nuisance. I think the judgment was rightly affirmed.