(*Circuit Court of Cook County.*)

## Christian Neilson

### vs.

(July 27, 1899.)

1. CONSTITUTIONAL LAW—POLICE POWER—COMPENSATION FOR PROPERTY DAMAGED FOR PUBLIC USE. Where private property is damaged through the elevation of railroad tracks, elevated in accordance with a city ordinance, such damage must be compensated for under the constitutional provision that private property shall not be damaged for public use without compensation and it is no defense that the ordinance was passed under the police power.

2. CONSTITUTIONAL LAW—PROPERTY DAMAGED FOR PUBLIC USE—POWER OF LEGISLATURE TO EXEMPT MUNICIPALITY. The legislature cannot exempt a municipality from the operation of the constitutional inhibition against taking private property for a public use without compensation.

3. CONSTITUTIONAL LAW—RAILROADS—PROPERTY DAMAGED FOR PUBLIC USE—EFFECT OF AUTHORITY OF MUNICIPALITY UNDER POLICE POWER. A railroad must compensate for property damaged by it in pursuance of a public use even though the improvements causing the damage have been ordered by the city acting in its governmental capacity in the exercise of its police power.

4. PLEADING—DUPLICITY—WHAT IS NOT. Where one general public improvement is carried on by several distinct entities, a declaration is not double which alleges that one of them inflicted certain damage and another certain other damage, etc., as long as they are not alleged as separate and distinct causes of action but simply as allegations as to injuries inflicted in the performance of the entire work, from all of which taken together the plaintiff's property was damaged.

5. PARTIES—JOINDER OF CORPORATION AND AGENTS IN ACTIONS EX DELICTO. In actions *ex delicto* a corporation and its agents are alike responsible and may be sued severally and jointly.

6. ACTIONS—TRESPASS AGAINST MUNICIPAL CORPORATIONS. The action of trespass as well as case will lie against a municipal corporation.

7. MUNICIPAL CORPORATIONS—LIABILITY WHEN NOT ACTING IN STRICTLY GOVERNMENTAL CAPACITY. When two parties enter into

an agreement by which certain work is to be done in pursuance of a joint purpose and the property of a third person is injured thereby the first two parties are jointly and severally responsible therefor and it is immaterial that one of the contracting parties is a municipal corporation.

8. CONSTITUTIONAL LAW—DAMAGING PROPERTY FOR PUBLIC USE— WHAT SORT OF DAMAGE RECOVERABLE. Where property is damaged for a public use it is only special damage to plaintiff's property which can be recovered, and not the damage resultant from the contiguity of properties.

9. CONTRACTS—PROPERTY DAMAGED FOR PUBLIC USE—EFFECT OF AGREEMENT TO SAVE HARMLESS. An agreement to save a party harmless from any liability incurred by him in the prosecution of a public work, irrespective of its validity between the parties, cannot effect a plaintiff's rights against either of the contracting parties.

Demurrer to declaration. Heard before Judge Murray F. Tuley. The facts are stated in the opinion.

*Masterson & Hoft,* for plaintiff.

*C. S. Thorton,* for the defendant, the city of Chicago, and *R. Mather,* for defendant, C., R. I. & P. R. R. Co.

*Gardner & McFadden,* for defendant L. S. & M. S. R. Co.

TULEY, J.:—

The demurrer of the city raises the question as to the liability of the city of Chicago, of the Chicago, Rock Island & Pacific Railway Company and the Lake Shore & Michigan Southern Railway Company, in connection with the elevation of the tracks of the two railroad defendants made under an ordinance of the city of Chicago of July 9, 1894.

The tracks of the two railroad companies were raised over a distance of several miles in the thickly populated part of the city, many of the street crossings on the line of the elevation were cut down and the grade lowered at the point of intersection; streets and alleys were built up solidly at some intersecting points, leaving them but blind thoroughfares; sidewalks on approaches to the point of intersection of the crossing streets were lowered, light and air of adjacent buildings were more or less interfered with and the buildings were cracked or otherwise damaged through the making of the im-

provement. A large number of suits have been commenced against the city of Chicago and the two railroad companies for the damages sustained by reason of the work.

In the amended declaration in this case it is alleged that the plaintiff was the owner of a large brick building adjacent to the right of way of the two railroad defendants, and located on the northwest corner of the intersection of Armour avenue and Thirty-seventh street. That on or about the 9th of July, 1894, the defendant, the city of Chicago, passed an ordinance whereby it required and contracted with the railroads that they should elevate the plane of their railroad tracks in the rear of and on the west side of plaintiff's premises in a certain manner therein described, setting out the ordinance in full. That said ordinance provides for the elevation of the tracks of the railway companies, designates the cross streets, etc., to be viaducted, among others being Thirty-seventh street, and provides for excavating such streets, gives specific details for the doing of the work, and that "all of said work shall be done as by and for the city of Chicago under the superintendence of the Department of Public Works, but at the expense of the said railway companies." Where the tracks of the two railway companies parallel each others, as they do most of the distance, the work was to be done at the joint expense of the railways, and where they did not parallel each railway was to pay the expense of elevating its own tracks. Provides that the damages caused by change of grade of streets and alleys should be adjusted and paid by the city of Chicago and that the ordinance should be null and void unless within thirty days it should be accepted by the railroad companies. That they should by their acceptance agree to pay $50,000 as liquidated damages for failure to carry out the provisions of the ordinance. Also that the railway companies should agree to pay, and pay at the time of the acceptance, to the city of Chicago $100,000 as a contribution toward the liabilities for land or business damages incurred or recoverable from the city of Chicago by the passage and enforcement of the ordinance or by changes of grade, etc., and that such payment should be held to protect the railroad com-

panies from all liability for said damages to said city, or others, save that covered by negligence in the doing of the work provided for.

The declaration alleges that said ordinance was accepted by the railroad companies, $100,000 deposited by them with the city of Chicago in accordance with its terms; that in accordance with the provisions of the ordinance plans and specifications were prepared for the work which required a part of the work to be done upon plaintiff's premises. That the railway companies commenced the elevation of their tracks in August, 1895, and practically completed the same by the end of November the same year. That it was the duty of defendants, before committing or permitting any damages to or taking any of plaintiff's premises, to have assessed and appraised the same and to have paid plaintiff a just compensation therefor; but regardless of such duty they did such work of elevation and of the excavation of Thirty-seventh street, etc., without paying such just compensation. That the defendants also, disregarding their duty to do said work in such manner as not to interfere with the property rights and easements of the plaintiff in any manner, so negligently and carelessly excavated Thirty-seventh street and conducted the work that the supports and foundations of his building were loosened and cracked so as to make the building almost worthless, and constructed a large embankment on the west side of and adjacent to plaintiff's premises. That the city as principal, and the railroad defendants, as agents and servants of the city, constructed a stone wall on the north side of Thirty-seventh street and across their right of way and into plaintiff's premises and up against and adjoining plaintiff's building, and in and upon the close and grounds of plaintiff, and appropriated part of plaintiff's premises to their own use, and, in disregard of plaintiff's rights, built over their right of way into premises not belonging to defendants, and thereby shut out light and destroyed other easements which plaintiff enjoyed upon the west and rear end of said premises. That all of said acts and doings were done in accordance with plans and specifications made by the defendant railway companies, rati-

fied and approved by the city, and were all done "as, by and for the city and under the direction and supervision of the city."

It alleges general ratification by the city; the tearing up and taking away of the sidewalk belonging to said premises and the lowering of the grade of the sidewalk so that it became impossible for the public to enter said premises for business purposes, whereby plaintiff was forced to build a stairway for that purpose down to the sidewalk. Alleges the taking and carrying away of a street lamp, the property of plaintiff. That the plaintiff's premises were otherwise greatly injured and made useless for the purpose intended. That having elevated the tracks of the railroad companies, the two railroad companies built an iron bridge over Thirty-seventh street crossing and continuously since have permitted the running of defendants' railroad trains over the same. Whereby plaintiff has been greatly damaged and his property rendered almost worthless, and the business to which it was adapted rendered almost worthless; all to the damage of plaintiff of fifteen thousand dollars.

The contention of the city upon its demurrer is that the ordinance of 1894, requiring the railway companies to elevate their tracks, construct subways, viaducts, etc., was passed in the exercise of the police power of the city. "That the constitutional provision that private property shall not be taken or damaged for public use without just compensation," must be construed with reference to the police power, and so construing it, that no recovery can be had by plaintiff.

The city claims, "To support the ordinance upon the broad foundation of the right to exercise the police power of the state for the public safety."

I find that the appellate court has passed upon this identical question, in a case not cited upon the argument, of *Marshall v. City of Chicago*, 77 Ill. App. 351. While this decision is not controlling, except in that particular case, *Marshall v. The City*, yet the opinion of Judge Adams is so logical and convincing, and so well sustained by the decisions of our own supreme court, that there is no escaping from its conclu-

sions.   The litigation arose out of a claim for damages caused
by the doing of the work under this same ordinance of July,
1894.

Judge Adams, in that case, well says: "It stands admit-
ted" (as it is by the demurrer in this case) "that the plain-
tiff's property was damaged for public use, and to hold that
in such case there can be no recovery would be to nullify the
constitutional provision cited."And that, "No case has been
cited, nor do we believe any can be found in which, there be-
ing a provision (constitutional or statutory) for compensa-.
tion for damage occasioned to private property for public
use, it has been held that there could be no recovery for such
damage."   Also, "The question, whether the improvement
was ordered in the exercise of the police power, or in the ex-
ercise of some other power, is wholly immaterial to the plain-
tiff's case, because, no matter what the power in the exercise
of which the ordinance of July 9, 1894, was passed, if the
plaintiff's property was damaged as claimed in his declara-
tion he is entitled to compensation."

Upon a review of the *Rigney Case*—which is the leading
case as to the meaning and effect of the constitutional limita-
tion that private property shall not be damaged for public
use without just compensation being made therefor—and of
the several decisions following the *Rigney Case*, I had come,
before seeing Judge Adams' opinion, to the same conclusion
at which he arrived upon this question.   The following Illi-
nois supreme court decisions fully sustain the appellate court:
*Rigney v. City of Chicago*, 102 Ill. 64, and cases cited; *C. W.
& I. R. R. v. Ayres*, 106 Ill. 511; *Zinc Co. v. La Salle*, 117 Ill.
411; *City of Bloomington v. Pollock*, 141 Ill. 346; *City of
Joliet v. Blower*, 155 Ill. 414; *L. E. & W. R. R. v. Scott*, 132
Ill. 429; *Parker v. Catholic Bishop*, 146 Ill. 167; *Metropolitan
W. S. Elevated Ry. Co. v. Stickney*, 150 Ill. 362; *Galt v. C. &
N. W. Ry. Co.*, 157 Ill. 125; *Metropolitan W. S. Elevated Ry.
Co. v. White*, 166 Ill. 375.

As said in the leading case, *Rigney v. City, ante*, the words
"or damaged" in the 1870 constitutional provision, were in-
tended "to declare a new rule of civil conduct from which

spring new rights which did not exist under the constitution of 1848." And that "we have no doubt it was the intention of the framers of the present constitution to require compensation to be made in all cases, where, but for some legislative enactment an action would lie by the common law."

There can be no question but that in a case like the present an action would lie at common law unless the corporation had the authority of an act of parliament, and in this state because of the constitutional provision referred to the legislature is without authority to exempt a municipality from its constitutional liability to make due compensation for all private property taken or damaged for public use. There can be no doubt but that the constitutional provision quoted was intended to give owners of private property a right of action for damages caused by improvements of this nature made for the public use or benefit.

### The Demurrer of the Lake Shore & Michigan Southern Railway Company and of the Chicago, Rock Island and Pacific Railway Company.

The railroads contend that as the city is not liable for the exercise of its police power under its governmental function in passing the ordinance, they are not liable for doing the work under the ordinance "any more than the laborer who shovéled the dirt," unless they were guilty of negligence in doing the work ordered by the city. If this contention could be sustained, the property owner would be between the "upper and nether millstone."

The disposal of the demurrer of the city disposes of this contention.

Objections are raised by the demurrers of the defendant railroad companies as to the declaration being double, in that it joins causes of action, as, for example, for damages sustained by changing the grade of Thirty-seventh street, which the city only had the right to do, making just compensation, with a cause of action against the railroad companies for negligence in building the elevation for the tracks, and that no joint liability is shown by the declaration.

I was at first inclined to think these objections were well taken. If we regard the excavation at Thirty-seventh street, the lowering of the sidewalk, the removal of the lamp-post, the building of the stone wall for the embankment over upon plaintiff's lot, the darkening or shutting off of light, the cracking of walls by reason of the excavation in Thirty-seventh street, and other injuries recited, as intended to be distinct, disconnected or separate acts and separate causes of action, there would be no denying that the declaration was double, in certain allegations, and that there is a misjoinder of parties defendants. They are not alleged as separate and distinct causes of action, but are allegations as to injuries inflicted in the performance of the entire work, from all of which injuries taken together and as a whole, the plaintiff's property was damaged, that is, lessened in value. Nor is it necessary to decide that any one of them, treated as a distinct and separate cause of action, would entitle the plaintiff to recovery. The particular injury might be over-balanced by actual benefits derived from the whole improvement, and, if so, no recovery could be had therefor. The question is whether or not plaintiff's property has, by reason of the improvement (as an entire and completed improvement) been lessened in value not whether any particular part of the work of itself, and without relation to the remainder of the work, caused an injury to plaintiff's premises.

The general rule is that in actions *ex delicto* agents and principals are alike responsible, and may be sued severally or jointly.

If a corporation authorizes a trespass, if it authorizes a work done which (if done as authorized) takes or damages private property for public use, "without just compensation," I can discover no reason why an action will not lie against the corporation or against its agent who does the wrongful act, or against both, for in torts, all concerned in the tort, he who orders as well as he who commits the action, are separately and jointly liable.

The action of trespass as well as case will lie against a municipal corporation: *Allen v. Decatur,* 23 Ill. 332; *Wolf v.*

*Boettcher*, 64 Ill. 317, 321; *Chicago v. McGraw*, 75 Ill. 566; *Chicago v. Turner*, 80 Ill. 419, and cases cited.

The question does not arise here whether or not the city may not by a proper ordinance—purely in the exercise of a governmental function—require a railroad to elevate its tracks, and this without the city incurring any liability, as, in this case, the ordinance it not only an ordinance, but is also an agreement, a contract between the city and the two railroad defendants. It must be viewed both in the light of an ordinance and of a contract. It is apparent from the face of it that it is beneficial to the city at large, and to the railway companies. If A and B enter into an agreement that B shall do certain work, which is beneficial to both parties, or that B shall do certain work on A's property, in connection with work to be done on B's property, or that B shall do certain work which it was A's duty to do, in connection with work which it was B's duty to do, and in the doing of such work the property of C was damaged, in either of such cases there can be no doubt but an action would lie against A or B or against both of them. It certainly makes no difference that one of such contracting parties might be a municipal corporation.

The complaint here is that the improvement, taking it as a whole, was the result of a concert of purpose and of action by and between the city and the two railway companies; that there was a joint purpose by this ordinance and contract to get these tracks elevated, viaducts built, streets and sidewalks lowered, other streets and alleys closed, and to make improvements in the manner and on the plan assented to by all the parties to the contract; that by reason of this concert of purpose, and co-operation of the city and railway companies in making the improvement in question, the plaintiff's property has been specially damaged and that all the parties so concerting together are liable, severally and jointly, as principals, for the special damages suffered by the plaintiff.

The constitutional provision cited was not intended to reach every possible injury that might be occasioned by a public improvement. *Rigney v. Chicago, ante.* The damages recov-

erable must be special to plaintiff's property and not arising solely from contiguity of properties. It is the public character of the improvement and the damages for public use which gives the right of recovery by reason of the constitutional provision cited.

It is not necessary for me to decide upon the validity of the contract by which the city agreed, in substance, to save the railway companies harmless from all damages caused to adjacent property owners, provided they were not the result of negligence on the part of the railway companies in the doing of the work, as that question is not before me. If such an agreement is valid as between the parties, it can have no effect upon the plaintiff's right of action as against either of the contracting parties.

The demurrer admitting that plaintiff's property has been damaged as alleged, by reason of the said improvement, and that he has received no just compensation therefor, the demurrer of all the defendants will be overruled and defendants ruled to plead in thirty days.